# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:_____**

**Filing Date:   March 12, 2015**

**NO. 34,204**

**DANIEL M. FABER,**

   Plaintiff-Petitioner,

v.

**GARY K. KING, Attorney General of the State of New Mexico,**

   Defendant-Respondent.

**CONSOLIDATED WITH:**

**NO. 34,194**

**GARY K. KING, Attorney General of the State of New Mexico,**

   Defendant-Petitioner,

v.

**DANIEL M. FABER,**

   Plaintiff-Respondent.

**ORIGINAL PROCEEDINGS ON CERTIORARI**
**Beatrice J. Brickhouse, District Judge**

Hector Balderas, Attorney General
Scott Fuqua, Assistant Attorney General
Santa Fe, NM

for Respondent and Petitioner Gary K. King


Tucker Law Firm, P.C.
Steven Lee Tucker
Santa Fe, NM

for Petitioner and Respondent Daniel M. Faber

**OPINION**

**MAES, Justice.**

{1} State agencies are supposed to make their documents available to the public under the New Mexico Inspection of Public Records Act (IPRA), NMSA 1978, Sections 14-2-1 to -12 (1947, as amended through 2009). *See* § 14-2-1(A) ("Every person has a right to inspect public records of this state . . . ."). Therefore, when an agency wrongfully denies a request for documents, Section 14-2-12(D) of IPRA states that "[t]he court shall award damages, costs and reasonable attorneys' fees to any person whose written request has been denied and is successful in a court action to enforce the provisions of [IPRA]." The parties do not dispute that the Attorney General wrongfully denied the IPRA request. Instead, the issue in these consolidated cases is what type of damages were authorized by the Legislature in Section 14-2-12(D). We hold that Section 14-2-12(D) permits compensatory or actual damages because the plain language, purpose, and history of IPRA indicate that neither punitive nor statutory damages were intended by the Legislature. We also hold that Faber is not eligible for nominal damages.

**I.     FACTS AND PROCEDURAL HISTORY**

{2} Attorney Daniel Faber (Faber) filed a federal lawsuit on behalf of three assistant attorneys general alleging gender discrimination in connection with their

salaries. The Attorney General filed a motion to stay litigation pending resolution of his motion to dismiss the complaint based on an immunity defense. On May 28, 2010, the federal district court entered a memorandum opinion and order granting the Attorney General's motion to stay all proceedings, including discovery; the federal district court later lifted the stay on January 14, 2011.

{3}     On August 23, 2010, Faber filed an IPRA request in his own name seeking employment data for every attorney who had been employed by the Attorney General's Office since January 1987. On August 26, 2010, the records custodian of the Attorney General's Office denied the IPRA request, stating that "[o]n August 25, 2010[,] I received your request to inspect certain records. This request is being denied as these records involve a current lawsuit and appear to circumvent the discovery process and the current Order Staying Discovery (attached)."

{4}     Faber filed a complaint for damages and a petition for writ of mandamus in the state district court against the Attorney General on September 7, 2010, alleging that his IPRA request had been wrongfully denied. The state district court found that the stay of discovery entered by the federal court did not preempt the statutory rights granted to New Mexico citizens by IPRA, and that the Attorney General violated IPRA by denying Faber's August 23, 2010, request. The court also issued a writ of

mandamus ordering the Attorney General to comply and ruled that damages would be considered at a later date.

{5} Faber subsequently moved for an award of "damages of $100 per day from the day the noncompliance began (August 26, 2010) until the day Defendant complies . . . ." As support, Faber noted that courts may award damages of $100 per day for failure to timely respond to an IPRA request under Section 14-2-11(C). Faber submitted that the same per diem damages should apply for wrongful denial of requests under Section 14-2-12(D). The state district court awarded damages of $10 per day from the date of the wrongful denial to the date the stay was lifted and thereafter "damages of $100 per day until the records are provided," and $257.19 in costs to Faber. The Attorney General appealed the state district court's award of damages. The determination of the IPRA violation was not at issue on appeal. *See generally Faber v. King,* 2013-NMCA-080, 306 P.3d 519.

{6} The New Mexico Court of Appeals did not directly address the type of damages that are appropriate under Section 14-2-12(D). Nonetheless, the Court of Appeals held that "damages for enforcement of a denied [IPRA] request are governed by Section 14-2-12(D), not Section 14-2-11(C)," and that the "statutory maximum per-day penalty of Section 14-2-11(C) does not create any 'standard' for an amount

3

of damages under Section 14-2-12(D) as asserted by Faber." *Faber*, 2013-NMCA-080, ¶ 15. Therefore, the Court determined that "[t]he only question we must answer is whether the nature and amount of the award was supported." *Id.* ¶ 9. The Court of Appeals also noted that the " term 'damages' under IPRA has not been construed or limited by our courts." *Id.* ¶ 11. The Court of Appeals held that Faber cannot receive Section 14-2-11(C) per diem damages under Section 14-2-12(D) and that a district court must specify and measure the nature of the damages. *Faber*, 2013-NMCA-080, ¶ 15. Since the nature of the damages was unclear from the record, the Court of Appeals remanded the case to the state district court to "enter findings supporting any award of compensatory damages so that we may, on review, know the basis for such damages and may then measure them against any award of punitive damages." *Id.* ¶ 17.

{7}    Faber and the Attorney General appealed separately to this Court to clarify what type of damages a court is permitted to award under Section 14-2-12(D). We granted both petitions for certiorari and consolidated the cases. "*Faber v. King,*" 2013-NMCERT-007.

**II.    STANDARD OF REVIEW**

{8}    Our review requires us to interpret provisions of IPRA. Interpretation of the

4

language of a statute is a question of law that we review de novo. *Cooper v. Chevron U.S.A., Inc.*, 2002-NMSC-020, ¶ 16, 132 N.M. 382, 49 P.3d 61. We construe IPRA in light of its purpose and interpret it "to mean what the Legislature intended it to mean, and to accomplish the ends sought to be accomplished by it." *San Juan Agric. Water Users Ass'n v. KNME-TV* (*San Juan*), 2011-NMSC-011, ¶ 14, 150 N.M. 64, 257 P.3d 884 (internal quotation marks and citation omitted).

{9} "In discerning the Legislature's intent, we are aided by classic canons of statutory construction, and [w]e look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *City of Albuquerque v. Montoya*, 2012-NMSC-007, ¶ 12, 274 P.3d 108 (alteration in original) (internal quotation marks and citation omitted). In addition to looking at the statutory language, "consider the history and background of the statute." *State v. Rivera*, 2004-NMSC-001, ¶ 13, 134 N.M. 768, 82 P.3d 939. We examine the overall structure of the statute and its function in the comprehensive legislative scheme. *See id.*

{10} To the extent that the Attorney General argues the district court awarded an erroneous amount of damages, we review an award of damages for substantial evidence. *See Moody v. Stribling*, 1999-NMCA-094, ¶¶ 37, 40, 127 N.M. 630, 985

5

P.2d 1210 ("As long as there is a reasonable method used to achieve an amount of damages, we will accept that amount.").

**III.    DISCUSSION**

**A.    Section 14-2-12 does not authorize the award of statutory damages**

{11}    We look first to the plain meaning of the statute to determine what damages are allowed when a party wrongfully denies a request for documents. When a state agency receives a written IPRA request, IPRA requires the agency's custodian of records to timely respond and IPRA also forbids the agency from wrongfully denying the request. *See* §§ 14-2-8 to -12. IPRA then obligates state agencies in two primary ways. First, it requires an agency's custodian of records to either (1) "permit the inspection immediately or as soon as practicable under the circumstances, but not later than fifteen days after receiving [the] written request," Section 14-2-8(D), or (2) deny the written request, but "the custodian shall provide the requester with a written explanation of the denial . . . within fifteen days after the request for inspection was received," Section 14-2-11(B)(3). Second, IPRA allows a claimant to file an action to enforce the procedures of IPRA when a records request has been wrongfully denied through separate mechanisms: Section 14-2-11, entitled "Procedure for denied requests," and Section 14-2-12, entitled "Enforcement."

6

{12} Sections 14-2-11 and 14-2-12 create separate remedies depending on the stage of the IPRA request. Section 14-2-11 only concerns the procedures a public entity shall employ when the public entity denies an IPRA request. Section 14-2-11 requires a public entity to respond to a records request within fifteen days unless the "request has been determined to be excessively burdensome or broad." Section 14-2-11(A). If the request is denied, "the custodian shall provide the requester with a written explanation of the denial." Section 14-2-11(B). Section 14-2-11 also addresses the damages available if the public entity does not adhere to the denial procedures. Specifically, Section 14-2-11(C) provides that:

> C. A custodian who does not deliver or mail a written explanation of denial within fifteen days after receipt of a written request for inspection is subject to an action to enforce the provisions of the Inspection of Public Records Act . . . and the requester may be awarded damages. Damages shall:
>
> (1) be awarded if the failure to provide a timely explanation of denial is determined to be unreasonable;
>
> (2) not exceed one hundred dollars ($100) per day;
>
> (3) accrue from the day the public body is in noncompliance until a written denial is issued; and
>
> (4) be payable from the funds of the public body.

Section 14-2-12(A), (B), (D) provides that:

> A. An action to enforce the Inspection of Public Records

7

Act . . . may be brought by:

> (1) the attorney general or the district attorney in the county of jurisdiction; or
>
> (2) a person whose written request has been denied.
>
> B. A district court may issue a writ of mandamus or order an injunction or other appropriate remedy to enforce the provisions of the Inspection of Public Records Act.
>
> . . . .
>
> D. The court shall award damages, costs and reasonable attorney's fees to any person whose written request has been denied and is successful in a court action to enforce the provisions of the Inspection of Public Records Act.

{13} Faber claims that statutory per diem damages are permissible under Section 14-2-12 as a penalty because otherwise the legislative purpose behind IPRA would be frustrated. Faber asserts that the broad language in Section 14-2-12 includes the authority for courts to award per diem damages comparable to those authorized under Section 14-2-11. Under this analysis, Faber contends that neither one of the comparable statutory damage provisions in Sections 14-2-11 or 14-2-12 requires proof of actual damages. The Attorney General contends that the Legislature did not clearly provide for an award of statutory damages under Section 14-2-12. The Attorney General also maintains that had "the legislature intended to make the same provision in wrongful withholding cases (*i.e.*, those cases enforced under Section 14-2-12), it could and would have done so." The Attorney General asserts that Faber's

position that Section 14-2-12 is "broader" is unfounded, especially since the legislature expressly provided for per diem damages in the immediately preceding section.

{14} Statutory damages are those available to a litigant without proof of actual injury because both the existence and the amount of the damages are established by statute. *See Marauder Corp. v. Beall*, 301 S.W.3d 817, 822 (Tex. App. 2009) (noting that "proof of actual damages is not a prerequisite to recovery of the damages" authorized by statute). Section 14-2-11 authorizes statutory damages of up to $100 per day. Section 14-2-11(C)(2); *see Edenburn v. N.M. Dep't of Health*, 2013-NMCA-045, ¶ 5, 299 P.3d 424. The Legislature also has provided statutory damages in several contexts. In the Unfair Practices Act, for example, the Legislature provided that a person who has suffered from conduct in violation of the Act "may bring an action to recover actual damages or the sum of one hundred dollars ($100), whichever is greater." NMSA 1978, § 57-12-10(B) (2005); *see also Jones v. Gen. Motors Corp.*, 1998-NMCA-020, ¶ 23, 124 N.M. 606, 953 P.2d 1104 (recognizing that Section 57-12-10(B) authorizes the recovery of "statutory damages one hundred dollars" if such a recovery would be greater than the actual damages). Statutory damages are also common among environmental enforcement statutes. *See* NMSA

9

1978, § 72-5A-12(A) (1999) (providing damages for violating the Ground Water Storage and Recovery Act, NMSA 1978, §§ 72-5A-1 to -17 (1999, as amended through 2003), of up to "(1) one hundred dollars ($100) per day [for] violation[s] not directly related to the illegal recovery or use of stored water; or (2) ten thousand dollars ($10,000) per day [for] violation[s] directly related to the illegal recovery or use of stored water"); NMSA 1978, § 74-6-10(C) (1993) (providing for damages for violating the Water Quality Act, NMSA 1978, §§ 74-6-1 to -17 (1993, as amended through 2009), of up to (1) "fifteen thousand dollars ($15,000) per day of noncompliance with the provisions in Section 74-6-5 . . .; or (2) ten thousand dollars ($10,000) per day of each violation of a provision of the Water Quality Act other than the provisions in Section 74-6-5 . . . or of a regulation or water quality standard adopted pursuant to the Water Quality Act).

{15} Faber does not explain why statutory damages are appropriate under Section 14-2-12, particularly in light of the fact that in the immediately preceding section, Section 14-2-11, the Legislature expressly provided for statutory damages. Had the Legislature intended to make the same damages available in wrongful denial cases enforceable under Section 14-2-12, it could have easily done so. Faber's reading embeds language from Section 14-2-11 into Section 14-2-12, which violates our long-

10

established rule of construction prohibiting courts from reading language into a statute which is not there, particularly when it makes sense as it is written. *See Reule Sun Corp. v. Valles*, 2010-NMSC-004, ¶ 15, 147 N.M. 512, 226 P.3d 611 ("Under the plain meaning rule, when a statute's language is clear and unambiguous, we will give effect to the language and refrain from further statutory interpretation. We will not read into a statute language which is not there, especially when it makes sense as it is written." (internal quotation marks and citation omitted)).

{16}     Section 14-2-11 and Section 14-2-12 create separate remedies depending on the stage of the IPRA request. Section 14-2-11 requires a public entity to respond to a records request within fifteen days unless the "request has been determined to be excessively burdensome or broad." Section 14-2-11(A). If the request is denied, "the custodian shall provide the requester with a written explanation of the denial." Section 14-2-11(B). It is when the custodian fails to respond to a request or deliver a written explanation of the denial that the public entity is subject to Section 14-2-11 damages. In that case, the court shall award the injured party damages not to exceed $100 per day that "accrue from the day the public body is in noncompliance until a written denial is issued" and are "payable from the funds of the public body." Section 14-2-11(C)(2)-(4).

{17} In this case, the Attorney General's Office received the IPRA request on August 25, 2010, and denied the request the next day, August 26, 2010. Section 14-2-11 damages are not applicable in this case because the Attorney General's Office timely answered the request with a denial by following the denial procedures set out in Section 14-2-11. However, because this action is for the post-denial enforcement of Faber's IPRA request, the enforcement and damages provisions under Section 14-2-12 apply. Section14-2-12(D) ("The court shall award damages, costs and reasonable attorneys' fees to any person whose written request has been denied and is successful in a court action to enforce the provisions of [IPRA]."). We must now determine what type of damages the Legislature authorized for a successful Section 14-2-12 claimant.

**B.      Discussion of typical types of  damages allowed**

{18} Unlike Section 14-2-11, Section 14-2-12 only provides that a "court shall award damages" and does not specify the nature of damages to be awarded. Section 14-2-12(D). As a result, we cannot look to the plain language of the statute to determine its meaning. Furthermore, the term "damages" has not been interpreted by our courts. *See* Office of New Mexico Attorney General, Inspection of Public Records Act Compliance Guide 45 (5th ed. 2008) ("Damages also could potentially include amounts necessary to compensate the requester for any losses related to the improper

12

denial. However, in the absence of judicial interpretation of the Act's damages provisions, we do not have a precise picture of what damages are allowed under the Act at this time."). Thus, we look to our precedent and the purpose, history, and legislative scheme of IPRA for further guidance. *See Rivera*, 2004-NMSC-001, ¶ 13.

{19}    Typically three kinds of damages are available to a prevailing party: (1) damages designed to remedy an injury, *i.e.*, compensatory or actual damages; (2) damages designed to punish a wrongdoer, *i.e.*, punitive damages; and (3) damages available to a litigant without having to prove either the existence or the extent of an injury. This last category includes both nominal and statutory damages.

{20}    Compensatory, or actual, damages are "the measure of a loss" and are awarded to place the plaintiff in a position that he or she would have been in had he or she not suffered the wrong complained of. *Sanchez v. Clayton*, 1994-NMSC-064, ¶ 11, 117 N.M. 761, 877 P.2d 567 (internal quotation marks omitted); Restatement (Second) of Torts § 903 cmt. a (1979). Punitive damages are awarded not to compensate a plaintiff for injury or loss suffered but to penalize a defendant for particularly egregious, wrongful conduct. *See* Restatement (Second) of Torts § 908. "Nominal damages are a trivial sum of money awarded to a litigant who has established a cause of action *but has not established that he is entitled to compensatory damages.*"

13

*Sanchez*, 1994-NMSC-064, ¶ 13 (emphasis in the original) (internal quotation marks and citation omitted).

{21} We first determine whether punitive damages apply under IPRA. Then we discuss actual or compensatory damages, and finally address Faber's nominal damages argument.

**1.     Section 14-2-12 does not authorize the award of punitive damages**

{22} The Attorney General argues that the term "damages" in Section 14-2-12 can only mean actual or nominal damages because punitive damages against the State are unavailable absent an express declaration to the contrary, and Section 14-2-12 does not make such a declaration. Faber argues that IPRA is not silent concerning punitive damages; it expressly uses the word "penalty" in reference to the remedies in Section 14-2-8(A): "failure to respond to an oral request shall not subject the custodian to any penalty." The implication being "that the failure to respond to a *written* request *shall* subject the custodian to a penalty as provided in Section [14-2-]11." We disagree with Faber's conclusion.

{23} In *Torrance Cnty. Mental Health Program v. N.M. Health & Env't Dep't,* 1992-NMSC-026, ¶ 1, 113 N.M. 593, 830 P.2d 145, this Court considered whether a litigant could recover punitive damages against the state in a breach of contract

14

action. We considered this issue in light of the fact that the Tort Claims Act expressly prohibits punitive damages, whereas a comparable contract claims statute was silent on the subject. *Torrance*, 1992-NMSC-026, ¶ 2. Because the Court was unable to discern any legislative intent "one way or the other on the subject of punitive damages in contract actions," *id.* ¶ 19, the Court balanced the policy interests favoring punitive damages against those favoring immunity. *Id.* ¶ 27. *Torrance* held that "the state's policy of not permitting assessment of punitive damages in tort cases, as reflected in our Tort Claims Act, applies also, despite legislative silence on the issue, to breach-of-contract cases." *Id.* ¶ 2.

{24} In reaching that conclusion, *Torrance* cited to both *Brown v. Village of Deming*, 1952-NMSC-042, 56 N.M. 302, 243 P.2d 609, and *Rascoe v. Town of Farmington*, 1956-NMSC-115, 62 N.M. 51, 304 P.2d 575. The *Brown* court stated that it is "the general rule, supported by the great weight of authority, that absent a statute so providing, exemplary or punitive damages may not be awarded against a municipality" because, among other things, punitive damages are intended to punish, and taking them from the municipality "would be to penalize the taxpayers who had no part in the commission of the tort." 1952-NMSC-042, ¶ 32. *Rascoe* affirmed *Brown* four years later, holding that "[e]xemplary damages ordinarily are not

15

allowable against a municipality in the absence of a statute so authorizing and we have none." 1956-NMSC-115, ¶ 14.

{25}   With that in mind, *Torrance* recognized that government liability for punitive damages would deter the abuse of governmental power and promote accountability among government officials. 1992-NMSC-026, ¶ 25. It nevertheless found that "the countervailing policies we believe must prevail are the necessity to protect public revenues unless their diversion is specifically authorized by statute, coupled with the function of punitive damages to visit *punishment* on one against whom they are assessed." *Id.* ¶ 27. The Court found those considerations "especially compelling" because of the prohibition on punitive damages found in the Tort Claims Act. *Id.*

{26}   Like NMSA 1978, Section 37-1-23 (1976), in *Torrance*, Section 14-2-12 is silent concerning punitive damages. Accordingly, the countervailing policies that must prevail are the necessity to protect public revenues unless their diversion is specifically authorized by statute. Further, because awarding such damages against a state entity would result in the expenditure of public, taxpayer dollars, it makes no sense to bar punitive damages in the tort and contract contexts but not in the IPRA enforcement context when the considerations supporting punitive damages—malicious or egregious conduct—are very similar in all three instances.

16

Thus we hold that Section 14-2-12 does not authorize punitive damages.

**2.     Section 14-2-12 authorizes the award of compensatory damages, costs, and attorneys' fees**

{27}     Faber argues that if a court does not have authority to award statutory or punitive damages, IPRA is "rendered meaningless" because there are no consequences for a public entity to wrongfully withhold documents. The Attorney General counters that the fundamental purpose of IPRA is to provide access to the public of documents that memorialize the operations of our State government; IPRA "is not about recovering damages."

{28}     The purpose behind IPRA is clearly set forth in Section 14-2-5:

> Recognizing that a representative government is dependent upon an informed electorate, the intent of the legislature in enacting the Inspection of Public Records Act . . . is to ensure, and it is declared to be the public policy of this state, that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of public officers and employees.

Section 14-2-5. In recognition of this stated public policy, we have long held that the public's right to inspect documents is paramount. *See San Juan*, 2011-NMSC-011, ¶¶ 15-16 ("IPRA's stated policy reflects the fact that people in our democratic society have 'a fundamental right' to inspect public records. . . . In order for government to truly be of the people and by the people, and not just for the people, our citizens must

17

be able to know what their own public servants are doing in their name."). The damage provisions contained in IPRA are designed to promote compliance and accountability from New Mexico's public servants. *See San Juan*, 2011-NMSC-011, ¶¶ 13, 16 ("IPRA's damage provisions are intended to encourage public entities' prompt compliance with records requests. . . . IPRA is intended to ensure that the public servants of New Mexico remain accountable to the people they serve."). Additionally, "IPRA's provisions create private attorneys general for more effective and efficient enforcement of IPRA than would be possible if only the attorney general or district attorney could enforce the statute." *Id.* ¶ 12 (internal quotation marks and citation omitted).

{29}   In 1993, the Legislature enacted two separate damages provisions through Sections 14-2-11 and 14-2-12. *See* 1993 N.M. Laws, ch. 258, § 8 (§ 14-2-11); 1993 N.M. Laws, ch. 258, § 9 (§ 14-2-12). By enacting these separate provisions in the same year, the Legislature intended that the separate damages provisions in Sections 14-2-11 and 14-2-12 address separate issues concerning the overarching public policy behind IPRA. *See State v. Smith*, 2004-NMSC-032, ¶ 10, 136 N.M. 372, 98 P.3d 1022 ("Whenever possible, we must read different legislative enactments as harmonious instead of contradicting one another." (internal quotation marks and citation

18

omitted)). Considering the structure of IPRA, its history, and its purpose, we conclude that the goal of prompt compliance is met by the damage provisions laid out in Section 14-2-11 while Section 14-2-12 ensures that IPRA requests are not wrongfully denied. Section 14-2-11 and Section 14-2-8(D) promote prompt compliance by requiring the custodian of records to promptly respond to it in writing within fifteen days so that the requester is apprised of his or her request. Therefore, we hold that the Legislature intended for Section 14-2-12 to only authorize the recovery of compensatory damages, costs, and attorneys' fees associated with the litigation to enforce a wrongfully denied IPRA request.

{30} It is true that IPRA aims to open access to the public of government records, however, there are certain restrictions and exceptions that may justify a public entity's denial. Section 14-2-1(A)(1)-(8) limits a person's right to inspect public records for a host of reasons, including, among other things, legal and medical confidentiality, trade secrets, and work products. Right or wrong, the Attorney General's Office was entitled to present its reasons for nonproduction to the district court for a decision under Section 14-2-12; up to the time of decision, the Attorney General was in compliance with IPRA. Otherwise, an agency would be subject to penalties simply for asserting a good faith reason for nonproduction as IPRA entitles it to do. With the

district court's finding that the Attorney General wrongfully withheld the documents, the goal of accountability was ultimately satisfied.

{31}     A successful litigant suing under Section 14-2-12 is adequately compensated by obtaining the documents he or she sought in the first place. If the litigant is not made whole by the furnishment of the documents, he or she can seek actual damages, costs, and attorneys' fees. These damages ensure that the entire process is virtually costless to a successful litigant. Such a regime neither chills IPRA enforcement litigation nor subverts the incentives IPRA provides to government agencies to comply with its dictates, especially where under Section 14-2-12 a state agency has a good-faith basis for denying the request, even if the denial is later deemed unlawful. In contrast, Section 14-2-11 ensures prompt compliance by allowing for statutory damages of up to $100 per day if a public body fails to timely respond to a records request. The built-in damages contained in Section 14-2-11 and 14-2-12 of IPRA create a complete and sensible mechanism that properly satisfies the objective of a transparent and accountable state government.

{32}     Moreover, the damages expressly provided for in Section 14-2-12 promote compliance and accountability in other ways. Section 14-2-12 allows for a writ of mandamus, an injunction, actual damages, costs, and attorneys' fees. We find costs

and attorneys' fees particularly important. In *State ex rel. N.M. State Hwy. and Transp. Dep't v. Baca*, 1995-NMSC-033, ¶¶ 21-22, 25, 120 N.M. 1, 896 P.2d 1148, this Court concluded that awarding attorneys' fees, which are punitive *and* compensatory, did not conflict with *Torrance* because a court's inherent authority to "control the parties and the litigation before it" outweighed the possible depletion of public revenues. In *Rio Grande Sun v. Jemez Mountains Pub. Sch. Dist.*, 2012-NMCA-091, ¶ 19, 287 P.3d 318, the Court of Appeals held that, "[a]s with other fee-shifting statutory schemes, IPRA's fee requirement encourages individuals to enforce IPRA on behalf of the public." *See, e.g.*, *Lucero v. Aladdin Beauty Colls., Inc.*, 1994-NMSC-022, ¶ 4, 117 N.M. 269, 871 P.2d 365 (noting that "one of the policies embodied in the [Human Rights] Act is to encourage lawyers to take cases involving alleged violations of the Act" by providing for the award of attorney fees). We hold that attorneys' fees, along with costs and actual damages, are sufficient incentives for New Mexico public officials to "remain accountable to the people they serve." *San Juan*, 2011-NMSC-011, ¶ 16.

{33} This case is a prime example of how the express, built-in remedies of Section 14-2-12 achieve the overall purposes of IPRA without punishing the taxpayers. On March 15, 2011, Faber was successful in his state court action to enforce the

21

provisions of IPRA, and the state district court issued a writ of mandamus ordering the Attorney General to comply with the request. In response to a motion filed by Faber, the district court subsequently awarded Faber "costs of $257.19; damages of $10 per day from the date of the wrongful denial [August 26, 2010] to the date the federal court stay was lifted [January 14, 2011]; thereafter, damages of $100 per day until the records are provided." The state district court did not award Faber attorneys' fees because Faber "waived an award of attorneys' fees by representing himself in this matter."

{34}    While the exact date of compliance cannot be known because the litigation is ongoing, we can be certain that on the day of this writing over 1,000 days have passed, thus tipping Faber's damages over the $100,000 mark. However, we recognize that much more time has passed in this case than the typical IPRA enforcement case. Still, we cannot conceive that the Legislature intended the taxpayers to burden such a cost where a public office wrongfully denies public records. *See State v. Herrera*, 1974-NMSC-037, ¶ 6, 86 N.M. 224, 522 P.2d 76 ("We will not construe statutes to achieve an absurd result or to defeat the intended object of the legislature."). Further, with the resolution of this case, Faber will receive the requested records and can recover his actual costs, thereby maintaining the goals of

22

providing access to public records and enforcing accountability. Faber is not entitled to attorneys' fees because he is an attorney and he litigated this matter pro se. *See Faber*, 2013-NMCA-080, ¶ 11 ("Here, Faber waived his claim to attorney fees and argued for damages, thus removing from our consideration one possible remedy for successful litigants."); *see also Guttman v. Silverberg*, 374 F.Supp. 2d 991, 993 (D.N.M. 2005) (recognizing that "[t]here is authority in many types of cases for the position that a pro se litigant who is also an attorney should not be awarded attorney's fees." (providing string citation to supporting authority)).

{35} Thus, Faber's damages under Section 14-2-12 are limited to compensatory damages designed to compensate him for any loss or injury suffered as a proximate result of the delayed production of the requested records. The Attorney General points out to this Court that Faber never produced any evidence of actual, compensatory damages, and the record contains none, an assertion that Faber has not challenged anywhere in his briefing to this Court, preferring instead to argue for statutory and punitive damages. Therefore, any claim to actual damages in this particular case has been waived.

**C.     Faber is not entitled to nominal damages**

{36} Faber makes the final argument that an award of per diem damages could be

23

upheld as nominal damages. Faber relies on *Ruiz v. Varan*, 1990-NMSC-081, ¶ 18, 110 N.M. 478, 797 P.2d 267, where this Court upheld the award of $5,000 as nominal damages because the party liable for the award did not complain of the amount and the amount is a matter of discretion for the trial court. Faber contends that the same is true here; that the Attorney General did not complain about the amount or argue that the trial court abused its discretion.

{37} The Attorney General asserts that he did complain about the state district court's discretion by advancing the argument that it lacked the authorization to award per diem damages. The Attorney General also argues that Faber's requested amount of damages of approximately $20,000 cannot be described as a "'trivial sum.'" *Id.* Lastly, the Attorney General claims that Faber is reversing his "courses midstream" because Faber never requested nominal damages. The Court of Appeals did not address this issue.

{38} In *Ruiz*, this Court considered whether the district court abused its discretion by awarding $5,000 as nominal damages. *See* 1990-NMSC-081, ¶ 17. *Ruiz* defined "nominal damages" as,

> damages awarded for the infraction of a legal right, where the extent of
> the loss is not shown, or the right is not dependent upon loss or damage,
> as in the case of rights . . . to have one's material property undisturbed

24

> by direct invasion. The award of nominal damages is made as a judicial declaration that the plaintiff's right has been violated.

*Id.* (omission in original) (quoting C. McCormick, Handbook on the Law of Damages § 20 (1935)). The *Ruiz* court stated that "nominal damages should be of a 'trivial sum.'" 1990-NMSC-081, ¶ 18 (citation omitted). *Ruiz* then noted that, "[a]ccording to McCormick, [Handbook on the Law of Damages,] some courts would not consider an award of $5,000 'nominal,' even as compared to the amount of the claim involved." *Id.* Yet *Ruiz* upheld that amount without expressly holding that $5,000 was not nominal because the party did not complain of the amount and the award and the amount of nominal damages is "a matter of discretion for the trial court." *Id. Ruiz* affirmed the judgment because the plaintiff succeeded in proving harm to the trial court and because the plaintiff "did not prove anything else in connection with its damages." *Id.* ¶ 19.

**{39}** *Ruiz* is inapposite to this case. In this case, we cannot review the district court's award of nominal damages for an abuse of discretion because the district court never specifically classified the damages as nominal. Instead, it awarded per diem damages under Section 14-2-12, which were requested by Faber. Further, both parties' argument that $5,000 is or is not nominal is unfounded. The *Ruiz* court explicitly

25

refused to "hold that $5,000 is a trivial sum as a matter of law . . . ." 1990-NMSC-081, ¶ 18. Additionally, unlike the defendant in *Ruiz*, the Attorney General contested the amount by disputing the court's authority to award damages in the first place.

{40} More importantly, our jury instructions expressly provide that "[n]ominal damages are a trivial sum of money, usually one cent or one dollar, awarded to a party who has established a right to recover but has not established that [he] [she] [it] is entitled to compensatory damages." UJI 13-1832 NMRA. The Use Note to UJI 13-1832 further states that "[t]his instruction should not be used when the cause of action requires proof of actual damages." Because Faber is entitled to the compensatory damages clearly provided for in Section 14-2-12, we hold that Faber is not eligible for nominal damages.

**IV.   CONCLUSION**

{41} Section 14-2-12 does not permit punitive or statutory damages. Section 14-2-12 only allows for a writ of mandamus, an injunction, actual damages, costs, and attorneys' fees. For the foregoing reasons, we reverse both the Court of Appeals and the district court and remand to the district court for further proceedings consistent with this opinion.

26

{42}     **IT IS SO ORDERED.**

_____
**PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

_____
**BARBARA J. VIGIL, Chief Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

_____
**CHARLES W. DANIELS, Justice**

27