This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40504**

**TENBEARS SOUTER,**

Plaintiff-Appellant,

v.

**NEW MEXICO DEPARTMENT OF
WORKFORCE SOLUTIONS,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Matthew J. Wilson, District Court Judge**

Mescall Law Firm, P.C.
Thomas J. Mescall
Phillip Patrick Baca
Albuquerque, NM

for Appellant

New Mexico Department of Workforce Solutions
Richard L. Branch, Associate General Counsel
Albuquerque, NM

for Appellee

### MEMORANDUM OPINION

**HENDERSON, Judge.**

**{1}** Plaintiff Tenbears Souter appeals two district court orders regarding actual damages, compensatory damages, and attorney fees in his lawsuit against Defendant New Mexico Department of Workforce Solutions (NMDWS) to enforce the Inspection of Public Records Act (IPRA), NMSA 1978, Sections 14-2-1 to -12 (1993, as amended through 2023). On appeal, Plaintiff argues that the district court erred in (1) reducing

Plaintiff's award of statutory damages, (2) denying Plaintiff's request for compensatory damages, and (3) partially denying Plaintiff's request for attorney fees. We conclude that the district court did not err in its assessment of damages and fees. Accordingly, we affirm.

**BACKGROUND**

**{2}** In April 2018, Defendant investigated a claim made by Plaintiff for unemployment insurance (UI) benefits because it had "information indicating that [Plaintiff] may have worked and not reported earnings as required by" the Unemployment Compensation Law. Based on its investigation, Defendant issued a "Notice of Determination," concluding that Plaintiff had been overpaid UI benefits for a week in April 2018. In a "Notice of Fraud Finding," Defendant stated that Plaintiff had been ineligible to receive UI benefits for this week and that the overpayment was "the result of [Plaintiff's] deliberate failure to furnish accurate information concerning material facts in regard to [his] claim for unemployment benefits." As a result, Defendant issued a statement of Plaintiff's balance of overpaid UI benefits totaling $21,403.25, which included overpayments from April 2018 and other overpayments. Plaintiff did not appeal the fraud determination or the overpayment assessment.

**{3}** In 2020, Plaintiff lost his job as a result of the COVID-19 pandemic and subsequently filed a claim for UI benefits. On September 1, 2020, Defendant sent Plaintiff a letter indicating that he had previously committed UI fraud and would have to repay $21,828 in overpaid benefits and penalties before he would be eligible for UI benefits. On September 23, 2020, Plaintiff sent Defendant an IPRA request seeking "all documents which substantiate [Defendant]'s claim that [Plaintiff] owe[s] $21,828." Less than two weeks later, Defendant indicated that it would need additional time to respond to Plaintiff's request and to expect a response by October 15, 2020. On November 13, 2020, Defendant advised Plaintiff that all but $531.25 of the fraud-based overpayments had been "cleared" and that if Plaintiff still wanted documentation supporting Defendant's fraud determination he should notify Defendant. Plaintiff responded three days later and stated he did want the requested documentation. The same day, Plaintiff filed a lawsuit alleging an IPRA violation. It was not until March 12, 2021, that Defendant provided Plaintiff with a letter denying his IPRA request.

**{4}** In December 2021, the district court granted summary judgment on the issue of Defendant's liability, finding that Defendant failed to provide Plaintiff with an adequate response to his IPRA request until sending the denial letter. As a result, the court concluded that, pursuant to Section 14-2-11, Plaintiff was entitled to statutory damages from November 13, 2020, through March 11, 2021, with the amount of damages to be determined at trial. In January 2022, the district court held a bench trial and determined that the appropriate amount of statutory damages was $10 per day.

**{5}** At trial, the district court also found that Defendant violated IPRA by improperly withholding the requested documents. The court denied Plaintiff's request for reimbursement of unclaimed UI benefits and for damages associated with "emotional

anguish" pursuant to Section 14-2-12(D). However, the court did grant Plaintiff an award of reasonable attorney fees and costs. After a hearing specifically on the amount of fees and costs, the district court awarded Plaintiff attorney fees for 151 hours of work at $250 an hour, but denied Plaintiff's request for fees concerning several motions and 98 hours of work claimed for trial preparation. The court also denied Plaintiff's request for use of a fee multiplier. Plaintiff appeals.

## DISCUSSION

**{6}** Plaintiff asserts that the district court erred by (1) reducing Plaintiff's award of statutory damages, (2) denying Plaintiff's request for compensatory damages, (3) partially denying Plaintiff's request for attorney fees, and (4) declining to use a fee multiplier in awarding attorney fees. We address these issues in turn.

## I. Damages

**{7}** "[W]e review an award of damages for substantial evidence." *Faber v. King*, 2015-NMSC-015, ¶ 10, 348 P.3d 173. "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Robey v. Parnell*, 2017-NMCA-038, ¶ 10, 392 P.3d 642 (internal quotation marks and citation omitted). "[W]e review the evidence in the light most favorable to support the [district] court's findings, resolving all conflicts and indulging all permissible inferences in favor of the decision below." *Jones v. Schoellkopf*, 2005-NMCA-124, ¶ 8, 138 N.M. 477, 122 P.3d 844. "The question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *N.M. Tax'n & Revenue Dep't v. Casias Trucking*, 2014-NMCA-099, ¶ 20, 336 P.3d 436 (internal quotation marks and citation omitted). "We will not reweigh the evidence nor substitute our judgment for that of the fact[-]finder." *Id.* (alteration, internal quotation marks, and citation omitted). To the extent that our discussion of these issues requires us to interpret provisions of IPRA, our review is de novo. *See Faber*, 2015-NMSC-015, ¶ 8.

## A. Section 14-2-11 Statutory Damages

**{8}** Plaintiff contests the district court's award of statutory damages under IPRA. Specifically, Plaintiff contends that the district court erred by (1) determining that Defendant denied Plaintiff's IPRA request on March 12, 2021, and accordingly only awarding statutory damages through March 11, 2021,[1] and (2) awarding $10 per day in damages. We disagree and explain.

---

[1] In his reply brief, Plaintiff asserts that Defendant "conceded" error on this point by not addressing the argument in its answer brief. However, Plaintiff misunderstands Defendant's burden. It is Plaintiff's burden as the appellant, not Defendant's, to clearly show error. In contrast, Defendant, as appellee, "does not even have to file a brief." *Mannick v. Wakeland*, 2005-NMCA-098, ¶ 39, 138 N.M. 113, 117 P.3d 919; see Rule 12-312(B) NMRA. An appellee's failure to argue and support an issue with citations to authority does not amount to a concession on the issue. *Mannick*, 2005-NMCA-098, ¶ 39. Thus, Defendant has not conceded this issue.

**1.     Date of Accrual**

**{9}**     Plaintiff first contests the dates for which the district court awarded statutory damages under Section 14-2-11. Under Section 14-2-11(C), statutory damages may be awarded if an IPRA custodian "does not deliver or mail a written explanation of denial within fifteen days after receipt of a written request for inspection." Statutory damages under Section 14-2-11 are only available from the date of noncompliance to the date the request is denied or fulfilled. Section 14-2-11(C)(3). An IPRA request is deemed denied when the records custodian provides a requester "a written explanation of the denial," including "describ[ing] the records sought" and "set[ting] forth the names and titles . . . of each person responsible for the denial." Section 14-2-11(B). "Denials are valuable information-gathering tools" because "the absence of either (1) production of responsive records or (2) a conforming denial based upon a valid IPRA exception sends a strong message to the requester that no responsive public record exists." *Am. Civ. Liberties Union of N.M. v. Duran*, 2016-NMCA-063, ¶ 38, 392 P.3d 181. "Thus, when a public body issues a conforming written explanation of denial, it is considered to have provided valuable information—upon which a requester can rely—sufficient to satisfy its substantive obligation under IPRA." *Britton v. Off. of Att'y Gen.*, 2019-NMCA-002, ¶ 30, 433 P.3d 320.

**{10}**     In this case, the district court found that Defendant had violated IPRA on November 13, 2020, because it "had completed its inquiry into . . . Plaintiff's IPRA request and should have permitted inspection of the requested documents or should have denied the written request . . . ." The district court also determined that Defendant denied Plaintiff's IPRA request on March 12, 2021, via written letter. The March 12 letter to Plaintiff states that "[Defendant] denies the request [sent on November 13, 2020]. [The request] seeks documents that are not subject to IPRA disclosure" under NMSA 1978, Section 51-1-32(A) (1985) and 11.3.100.106 NMAC. Accordingly, the district court determined that Plaintiff was eligible for statutory damages from November 13, 2020, the date of the IPRA violation, through March 11, 2021, the day before the denial letter was sent.

**{11}**     Plaintiff argues that he did not send any requests on November 13, and therefore the letter does not properly describe the records sought. However, the district court found that the letter contains a typographical error and that the letter should have referred to Plaintiff's request sent on "September 23, 2020." Plaintiff does not contest this finding on appeal and we are thus bound by it. *See Seipert v. Johnson*, 2003-NMCA-119, ¶ 26, 134 N.M. 394, 77 P.3d 298 ("An unchallenged finding of the [district] court is binding on appeal."). Plaintiff's IPRA request sent on September 23 sought "all documents" that supported Defendant's claim that Plaintiff had been overpaid, and now owed, $21,828 in UI benefits. Accepting the district court's finding that the March 12 letter referred to Plaintiff's September 23 request, we conclude that the letter sufficiently described the records Plaintiff sought and was denied access to such that Plaintiff could rely on the information provided. Thus, the district court had sufficient evidence to determine that Plaintiff's IPRA request was denied on March 12, 2021, and we affirm

the district court's assessment of the time period for which to award Plaintiff statutory damages.

## 2. Amount of Damages

**{12}** Next, Plaintiff argues that the district court erred in awarding statutory damages in the amount of $10 per day, rather than the statutory maximum of $100 per day, because evidence established that Defendant was dishonest about the reasons for denying Plaintiff's IPRA request. An award of statutory damages under Section 14-2-11 is required when a public body's "failure to provide a timely explanation of denial is determined to be unreasonable." Section 14-2-11(C)(1). However, "[i]f a district court determines that a public body's failure to allow for inspection of responsive records was reasonable, it may properly refuse to award statutory damages." *Britton*, 2019-NMCA-002, ¶ 38. In both situations, "the Legislature has afforded district courts broad discretion in determining the amount of the award." *Id.* "In the case of an intentional, bad faith withholding, the award should reflect the dual objectives of both punishing the underlying violation and deterring future noncompliance, meaning the award might be towards the higher end of the allowable range." *Id.* ¶ 39. "In the case of an inadvertent, but objectively unreasonable, nondisclosure, the award serves a different purpose—to acknowledge the violation and admonish the public body for its failure to diligently respond to the request—and the damages awarded might then be calculated accordingly." *Id.* In any event, damages shall "not exceed one hundred dollars ($100) per day." Section 14-2-11(C)(2).

**{13}** In explaining its assessment of statutory damages, the district court found that

> [t]hroughout the [COVID-19] pandemic, the records custodian was the only person at the Department [of Workforce Solutions] working on IPRA requests due to staffing limitations and personnel constraints . . . . The records custodian was also solely responsible for advising [Defendant] personnel concerning the different federal UI programs that were implemented in response to the COVID-19 pandemic. During the height of the pandemic, the volume of unemployment claimants also increased from approximately 20,000 a week to over 140,000 a week.

From these findings, the district court determined that Defendant did not violate Section 14-2-11(C) in a manner that supported an award of $100 per day in statutory damages. Based on these findings, we cannot say that the district court's decision to award $10 per day in statutory damages was not substantiated. Therefore, the district court did not err in assessing $10 per day in statutory damages.

## B. Section 14-2-12 Compensatory Damages

**{14}** Next, Plaintiff argues that the district court erred in denying his request for compensatory damages under Section 14-2-12(D) for emotional distress and uncollected UI benefits. Section 14-2-12(D) provides that "[t]he court shall award

damages, costs[,] and reasonable attorney[] fees to any person whose written request has been denied and is successful in a court action to enforce the provisions of [IPRA]." However, the mandatory language of Section 14-2-12(D) does not relieve an IPRA plaintiff of the burden of proving that their alleged damages were proximately caused by a public body's wrongful denial of their IPRA request. *See Faber*, 2015-NMSC-015, ¶ 35 (holding that a plaintiff's damages under Section 14-2-12 were limited to "damages designed to compensate [them] for any loss or injury suffered as a proximate result of the delayed production of the requested records").

**{15}** Plaintiff first contends that he was entitled to compensatory damages for emotional harm under Section 14-2-12 because he presented substantial evidence that he suffered emotional damages as a result of Defendant's wrongful denial of his IPRA request. We disagree.

**{16}** In denying Plaintiff's request for emotional damages, the district court found that Plaintiff "failed to present any evidence that any losses or damages he sustained were proximately caused by actions of [Defendant]." At trial Plaintiff testified that he suffered "lack of sleep and exhaustive stress" due to his inability to collect UI benefits. Plaintiff attributed this inability to collect benefits to Defendant's failure to provide him with documentation of the fraud determination that had rendered him ineligible to receive UI benefits. However, evidence was also presented that Defendant informed Plaintiff of this latest fraud determination in the summer of 2018, including an allegation that he had been overpaid $21,403.25 in UI benefits from multiple fraud determinations. Plaintiff did not appeal this fraud determination despite being informed of his right to do so in 2018. Moreover, Plaintiff did not appeal the determination in 2020.

**{17}** Plaintiff's argument ignores our standard of review. The question is not whether Plaintiff presented substantial evidence of causation to support an award of damages, but rather whether substantial evidence supports the district court's finding that Plaintiff did not demonstrate causation. *See Casias Trucking*, 2014-NMCA-099, ¶ 20 ("The question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." (internal quotation marks and citation omitted)). Here, there is sufficient evidence for a reasonable mind to accept the district court's finding that Plaintiff's emotional harms were not "reasonably connected as a significant link" to Defendant's wrongful denial of his public records request. Plaintiff's testimony and other evidence presented at trial indicates that Plaintiff's emotional anguish was caused by the fraud determination, which he had been informed of two years before he sought public records from Defendant, but never appealed. Therefore, we will not disturb the district court's finding that Plaintiff did not demonstrate that his emotional damages were caused by Defendant's wrongful denial of his IPRA request.

**{18}** Second, Plaintiff argues that he is entitled to $9,000 in UI benefits that he did not claim while he waited for Defendant to comply with IPRA.[2] Again, Plaintiff

---

2Plaintiff also argues that the district court erred in finding that he failed to exhaust his administrative remedies by appealing any alleged denial of UI benefits. Plaintiff's arguments in this appeal only concern

misunderstands our standard of review. There was sufficient evidence for the district court to conclude that Defendant did not prevent Plaintiff from seeking UI benefits in 2020.

**{19}** Following trial, the district court concluded that Plaintiff was not entitled to these damages because Plaintiff "fail[ed] to actually pursue the award of UI benefits." Plaintiff had testified that he did not file any additional claims for benefits because Defendant informed him that he was ineligible to receive any benefits. However, Plaintiff was previously informed that he "must continue to complete [his] weekly benefit claims certification if [he] remain[ed] unemployed in order to protect [his] rights to benefits." Despite this information, Plaintiff did not claim UI benefits in 2020 after his first claim was denied. Accordingly, there was sufficient evidence for the district court to conclude that Plaintiff's failure to claim UI benefits in 2020 was not due to representations allegedly made by Defendant. Based on the foregoing, we decline to disturb the district court's findings and conclusions regarding compensatory damages.

## II.    Attorney Fees

**{20}** Lastly, Plaintiff contests the district court's award of attorney fees. "[A]n award of attorney fees rests in the discretion of the [district] court and this Court will not alter the fee award absent an abuse of discretion." *N.M. Found. for Open Gov't v. Corizon Health*, 2020-NMCA-014, ¶ 15, 460 P.3d 43 (alterations, internal quotation marks, and citation omitted). A district court abuses its discretion when "a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153.

**{21}** IPRA's enforcement provision provides that "[t]he court shall award . . . reasonable attorney[] fees to any person whose written request has been denied and is successful in a court action to enforce the provisions of [IPRA]." Section 14-2-12(D). "In statutory fee-shifting cases like [cases under IPRA], the lodestar method for determining attorney fees is generally used because it provides adequate fees to attorneys who undertake litigation that is socially beneficial, irrespective of the pecuniary value to the claimant." *Rio Grande Sun v. Jemez Mountains Pub. Sch. Dist.*, 2012-NMCA-091, ¶ 20, 287 P.3d 318 (alteration, internal quotation marks, and citation omitted). "A lodestar is determined by multiplying counsel's total hours reasonably spent on the case by a reasonable hourly rate." *Id.* (internal quotation marks and citation omitted). "[T]ime spent is not always synonymous with the amount of time reasonably required to provide services for which compensation is to be afforded." *Lenz v. Chalamidas*, 1991-NMSC-099, ¶ 3, 113 N.M. 17, 821 P.2d 355. Courts apply the following factors when determining the reasonableness of a lodestar value:

---

UI benefits that he did *not* claim. Plaintiff seeks damages for UI benefits that he never claimed from October 15, 2020, through December 15, 2020. Accordingly, Defendant never took any action regarding these claims and Plaintiff did not have any administrative remedies to exhaust regarding these claims. As we affirm on other grounds, we need not address this issue further.

(1) the time and labor required—the novelty and difficulty of the questions involved and skill required; (2) the fee customarily charged in the locality for similar services; (3) the amount involved and the results obtained; (4) the time limitations imposed by the client or by the circumstances; and (5) the experience, reputation and ability of the lawyer or lawyers performing the services.

*Duran*, 2016-NMCA-063, ¶ 41 (internal quotation marks and citation omitted). "These criteria relate . . . to mathematic calculations that a district court must conduct . . . : (1) what hourly rate is the lawyer entitled to per hour, (2) how many hours should the project require, and (3) what do other lawyers bill for similar work?" *Id.* Moreover, in evaluating the "results obtained," the district court must address the reasonableness of the litigation. *See id.* "A factual determination by the district court that an IPRA fee request is reasonable when weighed against the results obtained in the litigation will be disturbed only when the award is contrary to logic and reason." *Id.* (internal quotation marks and citation omitted).

**{22}**     On appeal, Plaintiff argues that the district court erred in (1) denying attorney fees for certain motions, (2) denying attorney fees for trial preparation, (3) awarding an hourly rate of $250 per hour, and (4) denying Plaintiff's request for a fee multiplier. We discuss these issues in turn. However, Plaintiff has failed to provide any meaningful legal analysis regarding these issues in the briefs he submitted to this Court. "This Court has no duty to review an argument that is not adequately developed." *Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701. Despite this deficiency in Plaintiff's briefing, we address the issues raised in turn—though without the benefit of full analysis of the issues.

## A.     Duplicative Motions

**{23}**     First, Plaintiff asserts that he was entitled to attorney fees for 28 hours spent drafting motions that "briefed the legal issues raised by the [p]etition and [Defendant's] defenses," which the district court determined were "duplicative of the [p]etition." However, Plaintiff has cited no authority to support his assertion that the district court abuses its discretion when it denies attorney fees for pleadings and motions that are duplicative. Therefore, we decline to review the issue. *See Lee v. Lee* (*In re Adoption of Doe*), 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal." (citation omitted)). We affirm the district court's decision to deny the 28 hours of requested attorney fees.

## B.     Trial Preparation

**{24}**     Second, Plaintiff contests the district court's denial of attorney fees for 98 hours of "trial preparation." The district court declined to award fees for this time because Plaintiff's counsel's summary was "not itemized properly [and] fail[ed] to distinguish between what the attorneys did on the different types of briefing submitted . . . ." Plaintiff

contends that this denial was an abuse of discretion because itemized time records are not required to support an award of attorney fees and the district court was required to evaluate the time that was reasonably necessary to provide the services charged for. We disagree.

**{25}**     An award of attorney fees "should reflect the full amount of fees fairly and reasonably incurred by the plaintiff in securing an award under [IPRA]." *Rio Grande Sun*, 2012-NMCA-091, ¶ 19 (alteration, internal quotation marks, and citation omitted). A reasonable "lodestar figure cannot fairly or properly be ascertained unless the prevailing attorney supplies at least some evidence detailing the number of hours spent engaged in specific activities . . . ." *Kennedy v. Dexter Consol. Schs.*, 2000-NMSC-025, ¶ 36, 129 N.M. 436, 10 P.3d 115 (discussing attorney fees in Section 1983 litigation). Here, we cannot say the district court acted "contrary to logic and reason," *Duran*, 2016-NMCA-063, ¶ 41, in denying Plaintiff's request for fees when he failed to provide enough information for the court to assess whether Plaintiff reasonably incurred the fees he now requests. Moreover, the district court clearly weighed the results Plaintiff's counsel obtained with the reasonableness of his requested fees. Thus, we conclude that the district court did not abuse its discretion.

## C.     Hourly Rate

**{26}**     Third, Plaintiff argues that the district court abused its discretion in lowering Plaintiff's counsel's hourly billing rate from $475 per hour to $250. In assessing the hourly billing rate, the district court found that "this was a simple and non-complex case where the issues were straightforward." Based on evidence presented by Defendant, the district court also found that "[t]he fee customarily charged in this locality for similar services is $250 per hour . . . ." Additionally, the court found that "Plaintiff obtained some of the documents requested under IPRA through discovery[;] . . . . Plaintiff obtained statutory damages of $1,190 but did not obtain other damages[; and] . . . . Most of the issues were decided at the summary judgment level of the proceedings and not during trial . . . ." Finally, the district court found that the attorneys "were experienced and skilled beyond the average attorney."

**{27}**     The district court did not abuse its discretion in determining Plaintiff's counsel's hourly fee. Plaintiff presented an affidavit from his counsel asserting that a $475 hourly rate is consistent with rates "customarily charged in the Albuquerque-Santa Fe geographic market for similar IPRA litigation." To rebut counsel's assertion, Defendant submitted a study indicating that the average hourly billing rate for civil litigation in New Mexico is $241. We defer to the district court's resolution of this factual conflict. *See Buckingham v. Ryan*, 1998-NMCA-012, ¶ 10, 124 N.M. 498, 953 P.2d 33 ("[W]hen there is a conflict in the testimony, we defer to the trier of fact.").

**{28}**     Additionally, citing *Corizon Health*, 2020-NMCA-014, Plaintiff asserts that his counsel's hourly rate of $475 was per se reasonable. However, Plaintiff's reliance on *Corizon Health* is misplaced. In that case, this Court affirmed a district court determination that a $400 hourly rate was reasonable for IPRA litigation based, in part,

on an expert's "unrebutted declaration explaining market rates in the relevant jurisdiction" and the complexity of the case. *Corizon Health*, 2020-NMCA-014, ¶ 28. In this case, Plaintiff provided no evidence supporting an hourly rate of $475 other than counsel's own declaration. *See id.* ¶¶ 10, 28 (holding there was sufficient evidence to support an attorney fee award at $400 per hour when counsel offered "amounts of past attorney fees awarded to [them], a supporting affidavit from an expert on the market value of attorney fees in New Mexico, and additional supportive documentation including resumes and timesheets"). Additionally, Plaintiff does not dispute the district court's finding that this case did not present complex or novel issues. Therefore, considering the evidence presented by Plaintiff and Defendant, we cannot conclude that the district court failed to consider evidence of the reasonable hourly rate in the area. The district court did not abuse its discretion when it awarded Plaintiff attorney fees at the rate requested by Defendant.

### D.    Fee Multiplier

**{29}**    Fourth, Plaintiff challenges the district court's decision not to use a fee multiplier. "An award based on a lodestar may be increased by a multiplier if the lower court finds that a greater fee is more reasonable after the court considers the risk factor and the results obtained." *Atherton v. Gopin*, 2012-NMCA-023, ¶ 7, 272 P.3d 700 (internal quotation marks and citation omitted). The district court has discretion over whether to apply a multiplier to a lodestar value. *Id.* ¶ 9.

**{30}**    On appeal, Plaintiff does not argue that the district court abused its discretion in denying a multiplier because of the risk Plaintiff's counsel assumed or the results obtained. Instead, Plaintiff asserts that a multiplier is warranted based on this Court's decision in *In re N.M. Indirect Purchasers Microsoft Corp.*, 2007-NMCA-007, ¶ 74, 140 N.M. 879, 149 P.3d 976. In a similar vein, Plaintiff argued below that a multiplier of three is warranted in "garden variety" cases that are "neither legally nor factually complex." Additionally, Plaintiff argues that a multiplier should be awarded due to Defendant's sanctionable conduct.

**{31}**    We fail to see how Plaintiff's reliance on *In re New Mexico Indirect Purchasers Microsoft Corp.*, 2007-NMCA-007, is applicable in this case. In that case, this Court determined that a multiplier of three was reasonable because "[o]ther comparable cases have had similar multipliers." *Id.* ¶ 74. *In re New Mexico Indirect Purchasers Microsoft Corp.* and the "other comparable cases" cited are securities and class action cases—not cases regarding an individual's access to public documents. The factual circumstances in these cases are not similar enough to this case for us to conclude that the district court abused its discretion. Moreover, Plaintiff cites no authority to support his assertion that a fee multiplier should be awarded in cases where there is an allegation, but not a finding, of sanctionable conduct. Accordingly, we decline to address this contention. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2. Thus, we conclude that the district court's denial of a multiplier was not an abuse of discretion.

### CONCLUSION

**{32}** For the foregoing reasons, we affirm.

**{33}  IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Chief Judge**

**KATHERINE A. WRAY, Judge**