IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2019-NMCA-002

Filing Date: September 24, 2018

Docket No. A-1-CA-35346

MARCY BRITTON,

      Plaintiff-Appellant,

v.

OFFICE OF THE ATTORNEY GENERAL
OF NEW MEXICO,

      Defendant-Appellee.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
C. Shannon Bacon, District Judge

Freedman Boyd Hollander Goldberg
Urias & Ward, PA
John W. Boyd
Albuquerque, NM

for Appellant

Fuqua Law & Policy, PC
Scott Fuqua
Santa Fe, NM

for Appellee

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Denise M. Chanez
Albuquerque, NM

for Amici Curiae New Mexico Foundation for Open Government

**OPINION**

**HANISEE, Judge.**

1

**{1}**     At issue in this appeal is the appropriate damages available to Plaintiff under the Inspection of Public Records Act (IPRA), NMSA 1978, §§ 14-2-1 to -12 (1947, as amended through 2018), when she successfully proved that the New Mexico Attorney General's Office (AGO) failed to produce all nonexempt records in response to her request to inspect public records and further failed to provide her with an explanation of why she was denied the right to inspect those records. In *Faber v. King*, 2015-NMSC-015, ¶ 1, 348 P.3d 173, decided two months before the district court ruled in this case, our Supreme Court addressed what damages are available under Section 14-2-12 of IPRA when a public body affirmatively denies an IPRA request and it is later determined that the denial was wrongful. *Faber* held that in an action brought under Section 14-2-12 to enforce a "wrongful denial," successful plaintiffs may only recover actual damages, costs, and attorney fees, but not statutory or punitive damages. *Faber*, 2015-NMSC-015, ¶¶ 15, 31, 41. Relying on *Faber*, the district court here reasoned that because the AGO timely provided "some responsive records" to Plaintiff's request, Plaintiff's case is a "wrongful denial" case "that proceeds under Section 14-2-12, not under Section 14-2-11." Thus, the district court ruled that Plaintiff is entitled only to actual damages, attorney fees, and costs under Section 14-2-12, and is foreclosed from recovering Section 14-2-11's statutory damages of up to $100 per day. Concluding that the district court misapplied *Faber* and misinterpreted the damages provisions of IPRA in a manner inconsistent with the legislation's overarching purpose, we reverse.

## BACKGROUND

### Historical Facts

**{2}**     Plaintiff is a long-time animal welfare activist in New Mexico who, in 2007, learned about raids being conducted by the AGO's newly formed Attorney General's Animal Cruelty Task Force (AGACT). Among other things, Plaintiff became concerned that AGACT was engaging in "killing animals unnecessarily, inhumanely and unlawfully[.]" Plaintiff was also concerned that reports of animal cruelty that were made to the AGACT Hotline were going unanswered, and that Heather Ferguson, a private citizen who was appointed "coordinator" of AGACT, "was mishandling cruelty cases while exercising some sort of law enforcement authority derived from her status as 'coordinator' of the AGACT."

**{3}**     After writing to the AGO to express concerns regarding the hotline, Ferguson, and the failure to prosecute cases of animal cruelty and being told by the AGO that its "jurisdiction and authority [to investigate and prosecute complaints of animal cruelty] is, in fact, limited by state statute[,]" Plaintiff sought the assistance of sheriffs, district attorneys, the FBI, and state legislators among others. Because "[n]ot one agency investigated or took any action[,]" Plaintiff "decided to launch [her] own investigation through letters and IPRA requests directly to the AGO."

### Plaintiff's IPRA Requests and the AGO's Responses

**{4}** In March 2009 Plaintiff began submitting requests to inspect public records related to AGACT to the AGO. Specifically, Plaintiff was "trying to find out how ordinary citizens had acquired law enforcement and dispatch authority from the AGO." On June 30, 2009, Plaintiff served the request at issue in this appeal (June 2009 request)—her fifth request in total to the AGO—in which she sought to inspect:

> [a]ny and all electronic communications . . . sent and/or received by or between any persons employed by or associated with the [AGO,] including but not limited to . . . Steve Suttle, . . . and all persons on or associated with the Attorney General's Animal Cruelty Task Force/Hotline . . . , including but not limited to Heather Ferguson[,] . . . Sherry Mangold, etc. in connection to all activities . . . involving in any way the above-referenced parties for the time period of July 1, 2007 through June 30, 2009[.]

After initially informing Plaintiff on July 1, 2009, that the AGO would respond to Plaintiff's request no later than July 15, 2009, the AGO's records custodian later wrote to Plaintiff on July 14, 2009, to inform her that "[t]his request is excessively burdensome and broad and we need additional time to respond." The AGO told Plaintiff it would "gather the records into year groupings and allow inspection on an on-going basis."

**{5}** On August 1, 2009, having not been permitted to inspect any of the public records responsive to her June 2009 request, Plaintiff wrote to Chief Deputy Attorney General Albert Lama and asked the AGO to "immediately comply with IPRA and provide all requested public records to [her] by Friday, August 14, 2009." In a letter dated August 6, 2009, Lama's assistant provided Plaintiff with the following updates regarding the AGO's efforts to respond to her request: (1) the AGO had "completed [its] search for responsive records created in 2007" and had "located no responsive records for that year"; (2) the AGO anticipated "be[ing] able to provide [Plaintiff] with records for 2008 on or before September 8, 2009"; and (3) the AGO "will then continue [its] efforts to identify and make available for inspection the responsive 2009 records." The letter further stated that the AGO "believe[s] that there are potentially 10,000 records responsive to [Plaintiff's] request" and asked Plaintiff to provide additional specificity as to the particular records she wished to inspect. Plaintiff responded by letter on August 9, 2009, commenting that the AGO's August 6 letter had "brought to light the startling and unexpected fact that, by [the AGO's] estimation, there have been potentially 10,000 e-mails exchanged between members of [AGACT] and staff members of the [AGO] within th[e] last year and a half." She then informed the AGO that "[b]ecause of this new information, instead of tightening the scope of [her] public records request . . . , [she] must now expand it to include all of the records [the AGO] mentioned."

**{6}** On September 4, 2009, the AGO wrote to Plaintiff, informing her that "the first batch [of emails were] available and ready for inspection" and that the standard copying fee of $0.25 per page would apply. Plaintiff sent the AGO a check for $75, and the AGO provided copies of records on September 18, 2009. After Plaintiff sent another check for $19.50, the AGO provided Plaintiff with additional records on October 15, 2009, and

advised her that those records constituted "the last batch of emails available for inspection[.]" In total, Plaintiff received 378 records from the AGO in response to her June 2009 request.

{7}    On October 17, 2009, Plaintiff wrote to the AGO, asking it to "explain the discrepancy between the 10,000 emails that [the AGO] wrote would be responsive to [her] public records request and the 378 records that were actually provided to [her]." Plaintiff also said that she believed she had "evidence . . . to support [her] theory that the [AGO] has willfully withheld approximately 9,600 public records, includ[ing] a previously sent email that was not provided with the subject batches." She further expressed her surprise that Steve Suttle, an AGO attorney affiliated with AGACT and named in Plaintiff's June 2009 request, had recently and publicly stated at the State Humane Conference, " 'Our emails are private and confidential. We are not going to release them.' "

{8}    Lama responded on November 9, 2009, that the AGO had advised Plaintiff that her request could "*potentially* produce" up to 10,000 responsive records, "but at that time, a definite number had not yet been established." Lama informed Plaintiff that "[t]he request produced approximately 1000 emails, [of] which [Plaintiff has] been given 378[,]" and that "[s]ome documents retrieved were duplicative or were not within the scope of [Plaintiff's] request." Lama also explained that "[o]f the volume of documents reviewed, there is a small number, relating to information subject to non-disclosure under . . . the law enforcement exception to [IPRA]." Lama then concluded, "[a]t this time [the AGO's] office has fully responded to [Plaintiff's June 2009] request for inspection of public records that were identifiable based on [her] request."

{9}    Over the next two months, Plaintiff continued to "dispute [the AGO's] assertion that [it] . . . has fully complied with [Plaintiff's] request for inspection of public records." In a letter to Lama, Plaintiff explained that she believed the AGO was not in compliance with IPRA for two reasons: first, because it had not produced all responsive records to her request, and second, because it had issued a "blanket denial of records using the 'law enforcement' exception[,]" which Plaintiff contended IPRA did not allow. On February 3, 2010, Lama sent Plaintiff a letter and "copies of documents subject to inspection for your review." Lama informed Plaintiff that "the copies provided are duplicative of what [she was] previously provided in [her] original inspection of public records request" and that "[t]his completes all records requests received by this office from [Plaintiff]." Plaintiff "continued to be convinced that the AGO had withheld many emails that were responsive to [her] request" but felt that she "was at a 'dead end.' "

**Plaintiff's Discovery of Additional Responsive Records and Filing of the Instant Action**

{10}    Nearly two years later, in January 2012, Plaintiff served an IPRA request on the State Auditor—who, by then, had conducted his own audit of AGACT—seeking inspection of all records in the State Auditor's custody related to AGACT. Upon receiving a response to her request from the State Auditor, Plaintiff "could see

4

immediately that there were documents within the scope of [her June 2009] IPRA request that the AGO had provided to the [State] Auditor but had withheld from [her]." For example, Plaintiff received from the State Auditor, but not the AGO, an email dated February 10, 2009, sent by Sherry Mangold to a list of recipients that included three individuals employed by the AGO's office—including Steve Suttle—with a rough draft of minutes from the January 14, 2009, AGACT meeting.

**{11}** Also in January 2012, Plaintiff filed suit in the instant action, alleging that "[t]o date, almost two and a half years after receiving [Plaintiff's] IPRA request, the AGO has not provided all of the public documents in its possession that are responsive to [Plaintiff's] request." Through the use of depositions, Plaintiff learned that "the initial search" the AGO conducted in responding to Plaintiff's June 2009 request "was itself artificially limited and not reasonably calculated to identify many of the documents [Plaintiff] was seeking." Because Plaintiff's counsel was also counsel in separate litigation against the AGO, through which it had obtained documents from the AGO during discovery, Plaintiff additionally and by pure happenstance obtained further proof that there were "many documents" that the AGO had not provided to Plaintiff that were responsive to her June 2009 request. The AGO agreed to "run a new search of emails, with search criteria that were consistent with [Plaintiff's June 2009] IPRA request and that [the parties] believed would actually locate the documents that [Plaintiff] had originally sought through [her] IPRA request." On May 9, 2013, the AGO produced "at least 350 [emails] that were called for by [Plaintiff's June] 2009 IPRA request and that had not been produced earlier."

**Summary Judgment Proceedings and the District Court's Rulings**

**{12}** Plaintiff thereafter moved for summary judgment on her IPRA complaint based on what she contended were the AGO's two distinct violations of IPRA. Plaintiff first argued that the AGO violated IPRA by failing to "produce[] all of the responsive records before declaring that it had completed responding to [Plaintiff's] request." Plaintiff next argued that the AGO violated IPRA by failing to "comply with the procedures for denied requests outlined in Section 14-2-11(B)." In addition to requesting attorney fees and costs under Section 14-2-12(D), Plaintiff sought statutory damages of up to $100 per day as provided for in Section 14-2-11 of IPRA.

**{13}** In its response to Plaintiff's motion, the AGO did not dispute that "the initial search to locate documents responsive to Plaintiff's [June 2009] IPRA request was incomplete" but contended that "[t]he failure to initially produce [responsive] documents was inadvertent" and, "at worst, negligent." While the AGO repeatedly noted that Plaintiff had failed to establish that the AGO's failure to produce responsive records was done intentionally or in bad faith, it also contended that "it is ultimately irrelevant whether" Plaintiff proffered evidence that the AGO withheld  records in bad faith. The AGO's primary argument that the portion of Plaintiff's motion seeking Section 14-2-11 damages should be denied focused on the timeliness of the AGO's response. The AGO argued that because it was undisputed that it had "responded to Plaintiff's IPRA request within fifteen days of receiving it[,]" Section 14-2-11(C)'s statutory damages provision—

5

which provides that "[a] custodian who does not deliver or mail a written explanation of denial within fifteen days after receipt of a written request for inspection is subject to an action to enforce the provisions of [IPRA]"—"has no application here." The AGO argued that Plaintiff's action to enforce the alleged IPRA violations was one arising under Section 14-2-12 of the Act, which, according to the AGO, provides a "separate mechanism for enforcing a [s]tate agency's wrongful denial of records" through which only attorney fees and costs are recoverable.

**{14}** The district court denied Plaintiff's motion "with respect to the applicability of [Section] 14-2-11" statutory damages but concluded that "Plaintiff is entitled to a reasonable attorney[] fee" under Section 14-2-12. With respect to its denial of Plaintiff's request for Section 14-2-11 damages, the district court reasoned:

> IPRA establishes two potential violations of its provisions and also establishes two separate remedies for the enforcement of those violations. The first violation—the failure to timely respond to an IRPA request—is remedied through the provisions described above and found in Section 14-2-11. The second violation—the wrongful withholding of documents in response to a request—is remedied through the provisions of [Section] 14-2-12.
>
> . . . .
>
> Plaintiff's case is one that proceeds under Section 14-2-12, not under Section 14-2-11. The [AGO] responded to Plaintiff's IPRA request within the statutorily-mandated time period and provided some responsive records approximately two months later. Plaintiff believed, correctly, that the [AGO] had not fully responded to her request and brought this lawsuit in an effort to obtain those documents that she believed had been withheld. Her action is thus an enforcement action under Section 14-2-12, and she is limited to those damages made available in Section 14-2-12(D).

Relying on our Supreme Court's then-recently issued opinion in *Faber*, 2015-NMSC-015, the district court concluded that Plaintiff was entitled not to statutory damages but only to "a reasonable attorney[] fee."

**{15}** The district court subsequently denied Plaintiff's motion for reconsideration and granted the AGO's motion for summary judgment. In its opinion and order, the district court further elaborated on its reading of *Faber* and the reasons it concluded that Plaintiff's action was an action under Section 14-2-12 rather than Section 14-2-11. The district court explained that its ruling was "[i]n light of *Faber*" and reiterated its belief that "under IPRA there are 'two different sets of actions.' . . . One is where the agency completely ignores an IPRA request or doesn't respond in a timely fashion[,] and the other is 'the more traditional fight' under Section 14-2-12 where a requestor sues over what an agency should have produced." The district court described the instant case as one where "Plaintiff was suing over a wrongful denial" and rejected Plaintiff's argument

6

that the AGO's failure to either provide her with all responsive records or inform her of the basis for withholding responsive documents constituted a failure to timely respond to an IPRA request and, therefore, a violation of Section 14-2-11. Accordingly, the district court granted the AGO's motion for summary judgment.

**The Arguments on Appeal**

{16}     Plaintiff argues that the district court's decision reflects a misunderstanding of both IPRA and *Faber*. She points to the district court's statement that Section 14-2-11 damages apply only in cases "where the agency completely ignores an IPRA request or doesn't respond in a timely fashion" as evidence of that misunderstanding. According to Plaintiff, under the district court's ruling, "no matter how flagrantly an agency violates [Section 14-2-11's] procedural provisions, there is no liability for statutory penalties if the agency has gone through the formality of providing some sort of response, whatever it is, to the IPRA request." Such a ruling, contends Plaintiff, "does violence to IPRA and to [our] Supreme Court's decision in *Faber*."

{17}     Amicus Curiae New Mexico Foundation for Open Government (NMFOG), which filed a brief in support of Plaintiff, goes further in its condemnation of the district court's decision, arguing that "[t]he district court's ruling encourages deceptive responses to IPRA requests" and that "[a]bsent the deterrent effect of an award of statutory damages in situations like these, government entities have little incentive to behave openly and transparently by disclosing the existence of responsive documents." NMFOG specifically faults the district court for "focusing on the [AGO's] partial production of responsive documents rather than the [AGO's] failure to produce other responsive documents" and argues that the district court's ruling "undermines the overarching policy behind IPRA" by allowing public bodies that provide any response—no matter how inadequate, so long as it is timely—to an IPRA request to avoid the possibility of per-day statutory damages.

{18}     The AGO admits that its response to Plaintiff's request was "inadequate" but argues that the district court correctly concluded that statutory damages are not available to Plaintiff because the AGO's admittedly inadequate response was timely. The AGO's argument rests on its reading of IPRA as "establish[ing] two separate obligations for government agencies and two concomitantly separate remedies for violations of each." According to the AGO, a public body's two obligations under IPRA are: (1) to "promptly reply to IPRA requests[,]" and (2) to "respond to IPRA requests by providing all non-exempt responsive documents in their possession." The AGO argues that a public body's failure to comply with the first obligation is enforceable under Section 14-2-11(C), which provides for statutory damages of up to $100 per day, while a public body's failure to comply with its second obligation is only enforceable under Section 14-2-12, which allows for actual damages, attorney fees, and costs, but not statutory damages. Relying on *Faber* and arguing that the AGO's failure in this case, like the one in *Faber*, was in meeting only the second obligation, the AGO defends the district court's determination that Plaintiff may only recover the damages allowed under Section 14-2-12.

**DISCUSSION**

7

**{19}** The question to be resolved in this appeal is whether the district court erred in concluding that Plaintiff's action is exclusively "one that proceeds under Section 14-2-12" and limiting the damages Plaintiff can recover to actual damages under Subsection (D) of that provision. To answer this question requires that we interpret IPRA, making our review de novo. *See Faber*, 2015-NMSC-015, ¶ 8 ("Interpretation of the language of a statute is a question of law that we review de novo."). Because the facts relevant to our analysis are not in dispute, *see Carangelo v. Albuquerque-Bernalillo Cty. Water Util. Auth.*, 2014-NMCA-032, ¶ 16, 320 P.3d 492 (explaining that "[s]ince summary judgment was granted, we presume the district court found no material facts in dispute"), we apply de novo review to the district court's legal conclusion that Plaintiff is foreclosed from the possibility of recovering Section 14-2-11 damages under the facts of this case. *See City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146 (explaining that "if no material issues of fact are in dispute and an appeal presents only a question of law, we apply de novo review"). Ordinarily, we would begin with a discussion of IPRA itself; however, because the district court concluded that *Faber* directly controls the disposition of this case and because the AGO contends on appeal that *Faber* "forecloses" the possibility of Plaintiff recovering Section 14-2-11 statutory damages, we begin by considering *Faber*'s applicability and the extent to which it controls the outcome of this case.

## I. Whether *Faber* Controls

**{20}** *Faber* involved an action by attorney Daniel Faber against then-Attorney General Gary King in which Faber alleged that the AGO had "wrongfully denied" Faber's request to inspect public records. 2015-NMSC-015, ¶¶ 2, 4. Faber represented three assistant attorneys general in a federal employment lawsuit against the AGO. *Id.* ¶ 2. He filed an IPRA request for employment data on former AGO attorneys after the federal district court had entered an order staying proceedings, including discovery, in that case. *Id.* ¶¶ 2-3. The AGO denied the request on the basis that "these records involve a current lawsuit and appear to circumvent the discovery process and the current [o]rder [s]taying [d]iscovery." *Id.* ¶ 3. Less than two weeks later, Faber filed an IPRA enforcement action in state district court. *Id.* ¶ 4.

**{21}** The district court determined that the federal court's stay of discovery "did not preempt the statutory rights granted to New Mexico citizens by IPRA, and that the Attorney General violated IPRA by denying Faber's . . . request." *Id.* Having succeeded in his enforcement action, Faber later moved for an award of damages and specifically sought "damages of $100 per day." *Id.* ¶ 5 (internal quotation marks omitted). Noting that Section 14-2-11(C) allows courts to "award damages of [up to] $100 per day for failure to timely respond to an IPRA request[,]" Faber argued that "the same per diem damages should apply for wrongful denial of requests under Section 14-2-12(D)." *Faber*, 2015-NMSC-015, ¶ 5. In addition to costs, the district court awarded Faber "$10 per day from the date of the wrongful denial to the date the stay was lifted and thereafter damages of $100 per day until the records are provided[.]" *Id.* (internal quotation marks omitted).

**{22}** Our Supreme Court reversed the district court's award of per-day damages and held that in "*post-denial* enforcement" actions brought, as Faber's was, under Section 14-2-12, the only damages available are actual damages, costs, and attorney fees. *Faber*, 2015 NMSC-015, ¶¶ 17, 32 (emphasis added). The issue decided in *Faber* was narrow: "what type of damages a court is permitted to award under Section 14-2-12(D)." *Faber*, 2015-NMSC-015, ¶ 7. Our Supreme Court rejected the argument advanced by Faber that Section 14-2-11's per-day damages could and should be read into Section 14-2-12's damages provision. *Faber*, 2015-NMSC-015, ¶¶ 5, 13, 15. In so doing, it discussed the different remedies available under Sections 14-2-11 and -12 to illustrate why it was inappropriate—and violative of statutory construction rules—to read Section 14-2-11's statutory damages into Section 14-2-12. *Faber*, 2015-NMSC-015, ¶¶ 12, 14-16, 29-32. Specifically, it explained that "Sections 14-2-11 and 14-2-12 create separate remedies depending on the stage of the IPRA request." *Faber*, 2015-NMSC-015, ¶ 12. It described Section 14-2-11's per-day damages as being available "when the custodian fails to respond to a request or deliver a written explanation of the denial" and designed to meet "the goal of prompt compliance" by the public body. *Faber*, 2015-NMSC-015, ¶¶ 16, 29. By contrast, it described Section 14-2-12 damages as "ensur[ing] that IPRA requests are not wrongfully denied." *Faber*, 2015-NMSC-015, ¶ 29. Explaining that the AGO—which had undisputedly provided a good-faith written explanation of denial—"was entitled to present its reasons for nonproduction to the district court" and that the AGO "was in compliance with IPRA" up to the time of decision by the district court, our Supreme Court held that Section 14-2-11's statutory damages are unavailable in "wrongful denial" enforcement actions under Section 14-2-12. *Faber*, 2015-NMSC-015, ¶¶ 3, 29, 30.

**{23}** Importantly, *Faber* neither considered nor addressed the issue presented here: whether a public body that incompletely and inadequately responds to a request is "in compliance[,]" 2015-NMSC-015, ¶ 29, with its obligations under IPRA so as to avoid the possibility of statutory damages. *Faber*'s statements regarding Section 14-2-11 and the statutory damages provided therein must be understood in the context of the facts of that case and the resolution of the particular arguments advanced therein. *Cf. State v. Lucero*, 2017-NMSC-008, ¶ 31, 389 P.3d 1039 (rejecting as unpersuasive the defendant's reliance on a case "that presented very different legal and factual issues than his own" and that "did not squarely address" the issue he was raising). Critically, the parties in *Faber* did not dispute that there had been a "wrongful denial" of Faber's request, i.e., that the AGO had complied with its obligations under Section 14-2-11 by informing Faber of its "good-faith basis for denying the request," and that Faber's action was one brought strictly under Section 14-2-12. *Faber*, 2015-NMSC-015, ¶¶ 1, 31. Here, however, Plaintiff sued over the AGO's "fail[ure] to produce the public records . . . requested by . . . Plaintiff" in response to her June 2009 IPRA request and the fact that the AGO had *not* issued a written explanation of denial in conformance with Section 14-2-11(B). In other words, Plaintiff never conceded—and, in fact, continues to hotly contest—that the AGO had complied with its Section 14-2-11 obligations, yet the district court summarily concluded that Plaintiff's case is one that proceeds *only* under Section 14-2-12.

**{24}** As characterized above, the district court based its conclusion on the fact that "the AGO responded timely to Plaintiff's IPRA request and provided some responsive

9

records, but did not fully respond to Plaintiff's request." But the district court's own reasoning illustrates the important yet overlooked factual distinction between this case and *Faber*: that here, by the district court's own acknowledgment, the AGO "did not fully respond to Plaintiff's request." *But see Faber*, 2015-NMSC-015, ¶¶ 3, 30 (explaining that the AGO's written explanation of denial, which provided a good-faith reason for withholding requested records, in that case rendered the AGO "in compliance with IPRA"). The question to be decided here—not considered or answered by *Faber*—is whether the failure to *fully* respond renders a public body potentially subject to statutory damages. Thus, because cases are not considered authority for propositions not considered, we conclude that *Faber* does not control the outcome of this case and that the district court erred in concluding otherwise. *See Sangre de Cristo Dev. Corp., Inc. v. City of Santa Fe*, 1972-NMSC-076, ¶ 23, 84 N.M. 343, 503 P.2d 323 ("The general rule is that cases are not authority for propositions not considered.").

**{25}** But that alone does not mandate reversal. Because the district court based its conclusion on *Faber* and not an independent construction of IPRA, we next turn to IPRA itself to determine what damages the Legislature intended to be recoverable under the facts of this case.

## II. Interpreting IPRA

**{26}** The issue of first impression with which we are presented is whether the Legislature intended to subject a public body that issues a perfunctory response and eventually allows inspection of some, but not all, nonexempt public records to the possibility of Section 14-2-11's statutory damages. Before turning to the parties' specific arguments about the applicability of Section 14-2-11 damages in this case, however, we begin by reviewing IPRA and its purpose in order to provide context, which is key to any IPRA analysis. *See Rio Grande Sun v. Jemez Mountains Pub. Sch. Dist.*, 2012-NMCA-091, ¶ 8, 287 P.3d 318.

## A. Applicable Rules of Statutory Construction

**{27}** Courts must "construe IPRA in light of its purpose and interpret it to mean what the Legislature intended it to mean, and to accomplish the ends sought to be accomplished by it." *Faber*, 2015-NMSC-015, ¶ 8 (internal quotation marks and citation omitted). When construing individual statutory sections contained within an act, courts examine the overall structure of the act and consider each section's function within the comprehensive legislative scheme. *See id.* ¶ 9. "To determine legislative intent, we look not only to the language used in the statute, but also to the purpose to be achieved and the wrong to be remedied." *Hovet v. Allstate Ins. Co.*, 2004-NMSC-010, ¶ 10, 135 N.M. 397, 89 P.3d 69. "A construction must be given which will not render the statute's application absurd or unreasonable and which will not defeat the object of the Legislature." *State ex rel. Newsome v. Alarid*, 1977-NMSC-076, ¶ 9, 90 N.M. 790, 568 P.2d 1236, *superseded on other grounds by statute as stated in Republican Party of N.M. v. N.M. Taxation and Revenue Dep't*, 2012-NMSC-026, 283 P.3d 853.

**{28}** "We should not attribute to the [L]egislature an undue precision in drafting and thereby frustrate legislative intent when we construe a statute." *Jeffrey v. Hays Plumbing & Heating*, 1994-NMCA-071, ¶ 10, 118 N.M. 60, 878 P.2d 1009. That is particularly so because "[t]he Legislature often enacts laws with a broad sweep, and cannot be fairly expected to expressly address every eventuality." *Cerrillos Gravel Prods., Inc. v. Bd. of Cty. Comm'rs of Santa Fe Cty.*, 2004-NMCA-096, ¶ 15, 136 N.M. 247, 96 P.3d 1167. "Although [appellate courts] will not read into a statute language which is not there, we do read the act in its entirety and construe each part in connection with every other part in order to produce a harmonious whole." *Gen. Motors Acceptance Corp. v. Anaya*, 1985-NMSC-066, ¶ 15, 103 N.M. 72, 703 P.2d 169.

## B.      The Purpose of IPRA

**{29}** The starting point for any court tasked with resolving an IPRA challenge is to place into statutory context the particular arguments made vis-à-vis the Legislature's declared purpose in enacting IPRA. Unlike many statutes, for which the Legislature has provided no express statement of intent, IPRA contains a clear declaration of the public policy the Legislature intended to further by enacting IPRA. Section 14-2-5 provides:

> Recognizing that a representative government is dependent upon an informed electorate, the intent of the [L]egislature in enacting the Inspection of Public Records Act is to ensure, and it is declared to be the public policy of this state, that *all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of public officers and employees*. It is the further intent of the [L]egislature, and it is declared to be the public policy of this state, that *to provide persons with such information is an essential function of a representative government and an integral part of the routine duties of public officers and employees*.

(Emphasis added.) As our Supreme Court has explained, "IPRA is intended to ensure that the public servants of New Mexico remain accountable to the people they serve." *San Juan Agric. Water Users Ass'n v. KNME-TV* (*San Juan*), 2011-NMSC-011, ¶ 16, 150 N.M. 64, 257 P.3d 884. "New Mexico's policy of open government is intended to protect the public from having to rely solely on the representations of public officials that they have acted appropriately." *City of Farmington v. The Daily Times*, 2009-NMCA-057, ¶ 17, 146 N.M. 349, 210 P.3d 246, *overruled on other grounds by Republican Party of N.M.*, 2012-NMSC-026, ¶ 16.

**{30}** What constitutes "the greatest possible information" varies depending on the facts of a given case. Generally, providing "the greatest possible information" will consist of a public body permitting inspection of *all* public records that are responsive to a request and do not fall within one of IPRA's enumerated exceptions. *See* §§ 14-2-1(A), -6(C) (granting "every person . . . a right to inspect public records" and defining "inspect" as meaning "to review *all* public records that are not excluded in Section 14-2-1" (emphasis added)). Where the public body does so, it is not subject to a claim for any type of damages because it has fulfilled its substantive obligation to provide "the greatest

11

possible information" to the requester. *See Derringer v. State*, 2003-NMCA-073, ¶¶ 1, 6, 11, 133 N.M. 721, 68 P.3d 961 (holding that the plaintiff did not have a cause of action under IPRA where the public body, which initially "did not fully comply" with IPRA, "had furnished or provided access to all of the documents in its possession that [the p]laintiff had requested" prior to the plaintiff bringing his claim). In cases where a public body believes requested records are exempt from inspection based on one of IPRA's exceptions, "the greatest possible information" may initially—and in some cases, only—consist of a written explanation of denial issued by the custodian. *See* § 14-2-11(B) (providing that "[i]f a written request has been denied, the custodian shall provide the requester with a written explanation of the denial"). As this Court recently explained, IPRA is focused on providing "the greatest possible *information*[,]" not merely tangible documents, and "[d]enials are valuable information-gathering tools" because "the absence of either (1) production of responsive records or (2) a conforming denial based upon a valid IPRA exception sends a strong message to the requester that no responsive public record exists." *Am. Civil Liberties Union of N.M. v. Duran*, 2016-NMCA-063, ¶ 38, 392 P.3d 181. Thus, when a public body issues a conforming written explanation of denial, it is considered to have provided valuable information—upon which a requester can rely—sufficient to satisfy its substantive obligation under IPRA. *See Faber*, 2015-NMSC-015, ¶ 30 (explaining that "[r]ight or wrong, the [AGO] was entitled to present its reasons for nonproduction to the district court for a decision under Section 14-2-12" and that "up to the time of decision, the [AGO] was in compliance with IPRA").

**{31}**     Importantly, nowhere does IPRA expressly contemplate or provide for "incomplete" or "inadequate" responses, i.e., ones in which the public body has failed to permit inspection of all nonexempt responsive records. The expectation established by IPRA is that records custodians will diligently undertake their responsibility to process and fully respond to requests, including determining what public records are responsive to the request and what records or portions thereof may be exempt from disclosure, communicating the status of a request to the requester, and ultimately providing for inspection of all nonexempt records. *See, e.g.*, §§ 14-2-5, -6(C), -7, -8(D), -9(A), (C)(6); *San Juan*, 2011-NMSC-011, ¶ 36 (explaining that "[p]ublic bodies have a statutory duty to respond *diligently* to all records requests" (emphasis added)). The only basis IPRA provides for a public body to deny a person the right to inspect a public record is the body's reasonable, good-faith belief that the record falls within one of IPRA's enumerated exemptions. *See* §§ 14-2-1, -11. Thus, as *Faber* explained, IPRA "obligates" public bodies "to either (1) permit the inspection . . . , or (2) deny the written request[.]" 2015-NMSC-015, ¶ 11 (internal quotation marks and citation omitted). A public body that permits only partial inspection—i.e., inspection of some but not all nonexempt responsive records—plainly has not complied with its obligation to provide "the greatest possible information" to the requester.

**{32}**     Other provisions of IPRA further suggest that inadequate, incomplete, or partial responses to IPRA are not in compliance with IPRA. Section 14-2-10, for example, provides records custodians with "an additional reasonable period of time" to "comply" with a request that is deemed "excessively burdensome or broad[.]" By granting "an additional reasonable period of time" to custodians, the Legislature indicated the primacy

of the completeness of a response even over the Legislature's express desire for timely responses. If all IPRA required public bodies to do to be deemed compliant was to quickly provide for inspection of *some* records that are within the purview of a given IPRA request, the Legislature would not have granted custodians additional time to respond to requests. The grant of additional time "to comply" with "excessively burdensome or broad" requests effectively eliminates as a possible defense by the public body that it could not adequately and fully respond to a request because of time considerations.

{33}   In light of not only the express purpose of IPRA but also the entirety of IPRA's provisions and what they evince regarding the Legislature's intent, we conclude that when a public body provides an incomplete or inadequate response to a request to inspect public records, that body is not in compliance with IPRA. Because the undisputed facts establish that the AGO's response to Plaintiff's June 2009 request was "incomplete," we hold as a matter of law that the AGO was not in compliance with IPRA at the time Plaintiff brought her IPRA enforcement action. We next turn to what damages the AGO is potentially subject to given its noncompliant response.

## C.     IPRA's Damages Provisions Vis-à-Vis Its Purpose

{34}   As our Supreme Court has explained, "IPRA includes remedies to encourage compliance and facilitate enforcement." *San Juan*, 2011-NMSC-011, ¶ 12. IPRA's two provisions providing for damages—Sections 14-2-11(C) and -12(D)—"create separate remedies depending on the stage of the IPRA request." *Faber*, 2015-NMSC-015, ¶ 12. In cases where a request has been "deemed denied," Section 14-2-11 provides a statutory penalty of up to $100 per day when a public body's failure to respond to a request is determined to be "unreasonable[.]" Section 14-2-11(A), (C); *see Faber*, 2015-NMSC-015, ¶ 16 ("It is when the custodian fails to respond to a request or deliver a written explanation of the denial that the public [body] is subject to Section 14-2-11 damages."). Section 14-2-11 thus "encourage[s] compliance," *San Juan*, 2011-NMSC-011, ¶ 12, by public bodies during the operative stage of an IPRA request—i.e., in responding to a request—by creating a financial disincentive to failing to respond in a way that fulfills the public body's substantive obligation under IPRA. Section 14-2-12(D), by contrast, serves a different purpose. Section 14-2-12(D) requires courts to "award damages, costs and reasonable attorneys' fees to any person whose written request has been denied and is successful in a court action to enforce the provisions of [IPRA]." Section 14-2-12 thus "facilitate[s] enforcement," *San Juan*, 2011-NMSC-011, ¶ 12, after a request has been denied—whether "deemed denied" or affirmatively denied based on an exception later determined to be inapplicable—by encouraging individuals to pursue an enforcement action and lawyers to take cases involving alleged violations of IPRA. *See Faber*, 2015-NMSC-015, ¶¶ 17, 30-31 (explaining that "the enforcement and damages provisions under Section 14-2-12 apply" in "post-denial enforcement" actions); *Rio Grande Sun*, 2012-NMCA-091, ¶ 19. In other words, Section 14-2-11 is focused on deterring nonresponsiveness and noncompliance by public bodies in the first instance, while Section 14-2-12 is focused on making whole a person who, believing his or her right of inspection has been impermissibly denied, brings a successful enforcement action.

13

**{35}**     The respective remedies established in Sections 14-2-11 and -12 can also be understood as addressing the separate and distinct "wrongs" that can occur under IPRA. Section 14-2-11 addresses the "wrong" done *by* a public body, i.e., a public body's failure to respond to a request, which, as concluded above, includes everything from a complete failure to respond at all, to failing to permit inspection of all nonexempt responsive records, to failing to issue an explanation of denial in conformance with Section 14-2-11(B) when records are being withheld from inspection. Section 14-2-12, however, is designed to correct the "wrong" done *to* the requester when his or her right of inspection is improperly denied. *See* § 14-2-12(B), (D) (providing both equitable relief and compensatory damages to a requester to ensure that the right of inspection is enforced). As such, and contrary to the AGO's contention otherwise, we view it to be possible for an IPRA enforcement action to proceed—and for an IPRA plaintiff to recover—under both Sections 14-2-11 and -12. In other words, Section 14-2-11 and Section 14-2-12 damages are not mutually exclusive insofar as a public body may first occasion wrong to the requester and a requester may be separately and subsequently injured by the ensuing inaccessibility of records obtainable under IPRA. Indeed, an IPRA plaintiff who succeeds in an action based on a public body's noncompliance, i.e., a Section 14-2-11-based action, necessarily also succeeds in proving the "wrong" that Section 14-2-12 is intended to remedy and is, thus, eligible for the damages provided by both sections. That the same is not true for plaintiffs who prove only a "wrongful denial"—i.e., the circumstances in *Faber*—in no way forecloses the possibility that a differently situated IPRA plaintiff may be able to recover both statutory and actual damages.

**{36}**     Here, the undisputed facts establish that the AGO failed to permit inspection of approximately 350 records that were responsive to Plaintiff's request and for which no claim of exemption was ever asserted or written explanation of denial issued.[1] Thus, unlike in *Faber*, Plaintiff's request is not one that was "denied" in a way that limits her to Section 14-2-12 damages; rather, the AGO's failure to either produce for inspection or "deliver or mail a written explanation of denial" regarding the 350 documents more properly brings Plaintiff's action within the purview of Section 14-2-11. Because the AGO committed the type of "wrong" that Section 14-2-11's statutory penalty seeks to remedy, we conclude that the district court erred by summarily concluding that Plaintiff is foreclosed categorically from recovering damages under Section 14-2-11. We, therefore, reverse the district court's order denying Plaintiff's motion for summary judgment "with respect to the applicability of [Section] 14-2-11" statutory damages and remand for further proceedings.

### III.     Whether the District Court Must Assess the Statutory Penalty Against the AGO and Award Plaintiff Statutory Damages in This Case

---

[1]Notably, in response to Plaintiff's motion for summary judgment, the AGO admitted its "failure to initially produce those documents"—though it attempted to excuse that failure as "inadvertent"—and never contended that its failure with respect to at least certain documents was purposeful, i.e., based on a claimed exemption.

**{37}** Plaintiff contends that the evidence in this case establishes that the AGO's failure to provide her with all responsive records and/or an explanation as to why certain records were withheld was "certainly 'unreasonable' within the meaning of [Section 14-2-11(C)]." She, therefore, asks this Court to "remand to the district court with instructions to assess statutory damages against the [AGO] in an amount appropriate in light of the nature of the violation and the goal of . . . IPRA to encourage full disclosure of public records." The AGO argues that "[i]f the per[-]day penalties in Section 14-2-11(C) were applied every time an agency produced some but not all of its responsive documents, every requester who obtained in litigation those documents that had been withheld would be entitled to recover per[-]day damages." We next address why (1) the AGO's concern about automatic liability is misplaced, and (2) this Court cannot grant Plaintiff the relief she seeks.

**{38}** Section 14-2-11 does not entitle a requester to statutory damages in every case where the public body has failed to comply with IPRA. Section 14-2-11 merely creates the possibility of statutory damages and only mandates their award where the district court has determined that the public body's failure is "unreasonable." Section 14-2-11(C)(1). If a district court determines that a public body's failure to allow for inspection of responsive records was reasonable, it may properly refuse to award statutory damages. *See id.* If, however, the facts of a case support the conclusion that the public body's failure was "unreasonable," the district court must award statutory damages. *Id.* And even under that circumstance, the Legislature has afforded district courts broad discretion in determining the amount of the award.

**{39}** Unlike other statutory damages provisions that establish a sum certain to be paid in the event of a statutory violation, *see, e.g.*, NMSA 1978, § 57-12-10(B) (2005) (providing for recovery of "actual damages or the sum of one hundred dollars ($100), whichever is greater[,]" where a person has suffered a loss resulting from a violation of the Unfair Practices Act), Section 14-2-11 establishes the penalty as a "not to exceed" amount of up to $100 per day. This reflects the Legislature's understanding of the potential for IPRA noncompliance violations to vary widely in degree and kind and the concomitant need to allow district courts to employ their discretion to award statutory damages that will, as awards must do, effect "the objective of such an award[.]" *Cent. Sec. & Alarm Co. v. Mehler*, 1996-NMCA-060, ¶ 17, 121 N.M. 840, 918 P.2d 1340. In the case of an intentional, bad faith withholding, the award should reflect the dual objectives of both punishing the underlying violation and deterring future noncompliance, meaning the award might be towards the higher end of the allowable range. In the case of an inadvertent, but objectively unreasonable, nondisclosure, the award serves a different purpose—to acknowledge the violation and admonish the public body for its failure to diligently respond to the request—and the damages awarded might then be calculated accordingly. In light of this sensible scheme that provides for the exercise of factually informed judicial discretion, we are unpersuaded by the AGO's argument that subjecting public bodies to the *possibility* of Section 14-2-11 liability leads to an absurd result.

15

**{40}** Regarding Plaintiff's request that we instruct the district court on remand to assess statutory damages against the AGO, the question of the reasonableness of a public body's failure to comply with its IPRA obligations is one that must be answered as a matter of fact and is, therefore, not one for this Court to decide. *Cf. Bober v. N.M. State Fair*, 1991-NMSC-031, ¶ 17, 111 N.M. 644, 808 P.2d 614 (explaining that whether a defendant has breached the duty of exercising ordinary care "is a question of the reasonableness of [the defendant's] conduct, and thus a fact question" (internal quotation marks and citation omitted)); *South v. Lujan*, 2014-NMCA-109, ¶ 11, 336 P.3d 1000 (explaining that appellate courts "will not originally determine . . . questions of fact" (internal quotation marks and citation omitted)). We, therefore, remand this case to the district court to determine whether the AGO's failure to permit inspection of all nonexempt responsive records was unreasonable. *See* § 14-2-11(C)(1). If the district court determines that the AGO's failure to produce nearly half of the records responsive to Plaintiff's request was reasonable, it may properly deny Plaintiff an award of statutory damages. *See* § 14-2-11(C). If, however, the AGO's failure in this case is deemed unreasonable, the district court must award Plaintiff damages up to $100 per day accruing from the date the district court determines the AGO was in noncompliance until it came into compliance. *Id*.

**CONCLUSION**

**{41}** In the absence of the potential applicability of Section 14-2-11's per-day penalty, there exists no incentive for a public body to do anything more than provide a perfunctory "response" to a request no matter how incomplete and inadequate. Contrary to the district court's and the AGO's interpretation, such a "response" is, in fact, not a response at all under IPRA. We agree with Plaintiff and NMFOG that to uphold the district court's ruling would be to incentivize incomplete responses in direct contravention of the legislative purpose that underpins IPRA. We, therefore, reverse the district court's grant of summary judgment to the AGO and remand for proceedings in accordance with this opinion.

**{42}   IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**I CONCUR:**

_____
**JULIE J. VARGAS, Judge**

**LINDA J. VANZI, Chief Judge (specially concurring).**

**VANZI, Chief Judge (specially concurring)**

**{43}** I concur in the result. The undisputed facts of record establish that the "public body" at issue (the AGO), failed to respond to a written request for "public records" by

16

providing "all public records that are not excluded in Section 14-2-1," Section 14-2-6(C), (F), (G), and did not "deliver or mail a written explanation of denial within fifteen days after receipt of a written request for inspection," Section 14-2-11(C). Under such circumstances, the request is deemed to have been denied without a legal basis for doing so. Because the district court ruled that Section 14-2-11 is inapplicable, it did not determine whether "the failure to provide a timely explanation of denial" was "unreasonable," Section 14-2-11(C)(1), and thus, whether Plaintiff is entitled to the damages afforded by Section 14-2-11(C). Remand is therefore necessary to permit the district court to make the required determination.

**{44}**     The holding in *Faber*—that Section 14-2-11 does not apply when the public body has timely answered the request with a written explanation of denial following the denial procedures set out in Section 14-2-11, *see Faber*, 2015-NMSC-015, ¶ 17, does not control the result in this case because it is undisputed that the AGO neither produced for inspection all documents responsive to Plaintiff's request nor provided a written explanation why other responsive documents were being withheld. Further, contrary to the AGO's argument, our decision in *Derringer* makes clear that "in the event that a plaintiff is forced to take [enforcement] action, damages or costs or both can be awarded." 2003-NMCA-073, ¶ 13 (citing §§ 14-2-11, -12). No statutory text or precedent precludes Plaintiff from seeking the damages available under Section 14-2-11(C) and ultimately obtaining an award of such damages upon the district court's determination of whether the AGO's "failure to provide a timely explanation of denial" is "unreasonable."

_____

**LINDA M. VANZI, Chief Judge**

17