This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-40124**

**ALICE T. KANE, as Superintendent of Insurance for the State of New Mexico and as Custodian of the New Mexico Patient's Compensation Fund,**

Plaintiff-Appellee,

v.

**JAMES H. WOOD,**

Defendant-Appellee,

and

**PRESBYTERIAN HEALTHCARE SERVICES,**

Defendant-Appellant,

and

**ANDREW J. CAVAZOS; FELICIA C. WEINGARTNER; WAKLER BOYD; CHRISTOPHER ALLEN DODD; PHC-LAS CRUCES, INC.; LIFEPOINT HEALTH; ST. VINCENT HOSPITAL, ARDENT HEATLH PARTNERS, LLC; LOVELACE HEALTH SYSTEM, LLC; THE DOCTORS COMPANY; and JOEL TEICHER, M.D.,**

Defendants.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Francis J. Mathew, District Court Judge**

Cassandra Brulotte
Albuquerque, NM

for Appellee Alice T. Kane, Superintendent of Insurance

Law Office of James H. Wood, PC
Zachary E. Wilson-Fetrow
James H. Wood
Albuquerque, NM

for Appellee James H. Wood

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Kip Purcell
Albuquerque, NM

for Appellant Presbyterian Healthcare Services

**MEMORANDUM OPINION**

**HANISEE, Judge.**

**{1}** This case involves the Inspection of Public Records Act (IPRA), NMSA 1978, §§ 14-2-1 to -12 (1947, as amended through 2023).[1] Defendant-Appellant Presbyterian Healthcare Services (Presbyterian) appeals the district court's findings of fact, conclusions of law, and decision regarding disclosure of Presbyterian's records as held by Plaintiff-Appellee Alice Kane, in her official capacity as Superintendent of Insurance for the State of New Mexico (the Superintendent).[2] For the reasons that follow, we reverse.

**{2}** Although centrally related to IPRA, this appeal does not arise from a standard IPRA enforcement action. Rather, here, the Superintendent—acting in their role as the Custodian for the Patient's Compensation Fund (the PCF)—filed a declaratory judgment action requesting that the district court clarify the Superintendent's responsibilities and

---

[1]Certain sections of IPRA were amended following the underlying events in this case. *See* §§ 14-2-1, -1.2, -6. Accordingly, all references to the statute throughout this opinion are to the 2019 version, as such was the version in effect when the underlying proceedings began.

[2]John Franchini served as the Superintendent of Insurance at the start of the district court proceedings. Franchini's tenure as Superintendent ended on December 31, 2019, after this appeal was filed. Russell Toal was thereafter named as Franchini's successor, effective January 1, 2020. Alice Kane was then appointed as Toal's successor on June 10, 2023, during the pendency of this appeal, and was automatically substituted as a party. *See* Rule 12-301(C)(1) NMRA ("When a public officer is a party to an appeal or other proceeding in the appellate court in the officer's official capacity and during its pendency . . . resigns or otherwise ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party. Proceedings following the substitution shall be in the name of the substituted party."). We hereinafter refer to the Superintendent using "they/their" pronouns given the number of different individuals who served as Superintendent throughout the proceedings in this case.

obligations in responding to various IPRA requests. Defendant-Appellee James Wood submitted one such IPRA request to the Superintendent, seeking materials related to Presbyterian's application to become a qualified healthcare provider under the Medical Malpractice Act (MMA) and for admission into the PCF. Rather than issue a response to Wood's IPRA request, the Superintendent filed the declaratory judgment action, naming Presbyterian and Wood as Defendants. In pertinent part, the Superintendent's declaratory judgment action sought clarity as to whether it should withhold or disclose the materials requested by Wood, positing the questions of whether the Superintendent, in their role as Custodian of the PCF, is a public body subject to IPRA and, if so, whether provisions of either the Insurance Code, NMSA 1978, § 59A-2-12(B) (2013), or the Administrative Procedures Act (APA), NMSA 1978, § 12-8-15(G) (1969), provide means by which the Superintendent may deem materials confidential such that they fall into the "as otherwise provided by law" exception to inspection under IPRA. *See* § 14-2-1(H). The requested materials at issue, submitted as parts of Presbyterian's application for admission to the PCF, include Presbyterian's application; a list describing claims against Presbyterian including defense and indemnity expenses (also called a "loss run," and referred to as such here); Presbyterian's actuarial reports, and premium amounts paid by Presbyterian for malpractice liability insurance.[3]

**{3}** The district court held an evidentiary hearing on the Superintendent's declaratory judgment action with the specific aim of addressing the Superintendent's claims that the materials requested by Wood were excepted from inspection under IPRA. The district court did not permit Presbyterian to present evidence at the evidentiary hearing, reasoning that the hearing's sole purpose was to allow the Superintendent to present evidence in support of their position as to exceptions to inspection under IPRA. The district court did, however, permit Presbyterian to file an amicus brief following the evidentiary hearing. Following the hearing, the district court filed its decision in which it found, in pertinent part, that the Office of the Superintendent (OSI) is a governmental agency subject to IPRA and that, as the district court had previously determined, both OSI as well as the PCF—and thus the Superintendent as PCF Custodian—were subject to IPRA. The district court further concluded that the materials in question were subject to production, reasoning that the Superintendent failed to demonstrate that the materials were excepted from inspection under IPRA.

**{4}** Presbyterian now appeals the district court's decision, arguing that the district court erred in restricting Presbyterian's participation in the evidentiary hearing and in ruling that the requested materials were subject to disclosure under IPRA. Presbyterian contends that the requested materials fell under certain enumerated exceptions to the general right to inspection under IPRA, specifically asserting that such materials constituted trade secrets or attorney-client privileged information, or were excepted from

---

3To the extent the parties dispute whether the various requested materials are considered to be distinct components, there is support in the record—including within the district court's decision—demonstrating that all of the requested materials were provided by Presbyterian to the Superintendent as part of Presbyterian's application process to become a qualified healthcare provider under the MMA and to participate in the PCF. We therefore consider all requested information and materials to effectively constitute the application in full.

inspection under Section 59A-2-12(B) or as otherwise provided by law. *See* § 14-2-1(F), (H) (providing for such exceptions). Wood answers that Presbyterian did not have a right to submit evidence at the evidentiary hearing because it was not an aggrieved party as to the underlying IPRA controversy, given that the IPRA requests were directed to the Superintendent—not Presbyterian—and the Superintendent therefore solely held the burden of proof as to any applicable exception to inspection. Wood argues as well that the district court correctly concluded that the requested materials are subject to inspection under IPRA because neither Presbyterian nor the Superintendent met their burden of proving that any of the materials are subject to trade-secret protection, confidentiality, attorney-client privilege, or work product privilege.

{5}     The Superintendent submitted an answer brief as well, rather than filing a notice of appeal, arguing in support of the proposition that Presbyterian should have been allowed to present evidence at the hearing below and that the district court's decision should be reversed. In addition to such arguments, which were responsive to Presbyterian's brief in chief, the Superintendent presented in their answer brief arguments that fall outside the scope of the issues raised by Presbyterian on appeal. Specifically, the Superintendent contends that in their capacity as Custodian of the PCF, they are not a public body subject to IPRA, and, alternatively, that Section 59A-2-12(B) of the Insurance Code provides the Superintendent with the authority to classify certain materials as confidential such that the materials are excepted from inspection under IPRA, and that Section 12-8-15(G) of the APA establishes the only procedures by which a requesting party may challenge an agency's determination that documents are confidential or privileged. The Superintendent raises these arguments under Rule 12-201(C), which provides that "[a]n appellee may, without taking a cross-appeal . . . , raise issues on appeal for the purpose of enabling the appellate court to affirm, or raise issues for determination only if the appellate court should reverse, in whole or in part, the judgment or order appealed from." Our ruling in this case resolves the matter based primarily on the applicability of the confidentiality provisions of Section 59A-2-12(B) as they relate to IPRA, and we therefore decline to reach the Superintendent's additional arguments regarding whether the Superintendent as Custodian of the PCF is a public body and whether the APA is applicable to the case at hand, as doing so is not compelled by the rule and would not change the outcome on appeal. Further, for the same reason, we decline to address the additional basis for reversal argued for by Presbyterian and the Superintendent, that is, whether the district court erred in precluding Presbyterian from presenting evidence at the evidentiary hearing below.

{6}     We note that, here, we express no opinion regarding the propriety of the Superintendent's decision to seek declaratory judgment in order to test the application of IPRA and other relevant statutes to either the Superintendent in their capacity as Custodian of the PCF or to the OSI. Rather, because the parties on appeal focus their arguments on the merits of the district court's decision, we confine our analysis to what we see as the central and determinative issue at hand: whether the district court erred in its conclusion that the Superintendent failed to prove that the materials requested by Wood were excepted from inspection under IPRA.

**{7}** Our review of this issue requires us to interpret provisions of IPRA and other relevant statutes, and "[i]nterpretation of the language of a statute is a question of law that we review de novo." *Faber v. King*, 2015-NMSC-015, ¶ 8, 348 P.3d 173. "In discerning the Legislature's intent, we are aided by classic canons of statutory construction, and we look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *N.M. Found. for Open Gov't v. Corizon Health*, 2020-NMCA-014, ¶ 15, 460 P.3d 43 (internal quotation marks and citation omitted). "In so doing, we take care to avoid adopting a construction that would render the statute's application absurd or unreasonable or lead to injustice or contradiction." *Id.* (internal quotation marks and citation omitted). We will construe a statute to be "in harmony with other, related statutes." *Provisional Gov't of Santa Teresa v. Doña Ana Cnty. Bd. of Cnty. Comm'rs*, 2018-NMCA-070, ¶ 18, 429 P.3d 981.

**{8}** Two statutes are centrally relevant to our analysis in this case: Section 14-2-1 of IPRA and Section 59A-2-12(B) of the Insurance Code. Under Section 14-2-1 of IPRA, "[e]very person has a right to inspect public records of this state." There are exceptions to such right, including for materials that constitute trade secrets, attorney-client privileged information, or information excepted "as otherwise provided by law." Section 14-2-1(F), (H). The "as otherwise provided by law" catch-all exception "includes statutory and regulatory bars to disclosure, constitutionally mandated privileges, and privileges established by our rules of evidence." *Pacheco v. Hudson*, 2018-NMSC-022, ¶ 39, 415 P.3d 505 (internal quotation marks and citation omitted).

**{9}** Section 59A-2-12(B) of the Insurance Code provides that the Superintendent may classify certain information provided to it as confidential, and information deemed to be confidential shall not be subject to public inspection. The statute reads:

> Except as otherwise provided by the Insurance Code or by order of court, the papers and records [of the OSI] shall be open to public inspection. The [S]uperintendent may classify as confidential certain records and information obtained from another governmental agency or other source upon the express condition that they remain confidential or are deemed confidential by the [S]uperintendent, *and such records and information shall not be subject to public inspection while confidentiality exists*; except that no filing required to be made with the [S]uperintendent under the Insurance Code shall be deemed confidential unless expressly so provided by law.

*Id.* (emphasis added).

**{10}** Section 14-2-1(H) of IPRA provides the general right to inspect public records except "as otherwise provided by law," including statutory bars to disclosure. *See Pacheco*, 2018-NMSC-022, ¶ 39. We interpret Section 59A-2-12(B) as providing one such statutory bar, given that the plain language thereof permits the Superintendent to "classify" or "deem" certain information as confidential, and further provides that such

classified information shall not be subject to public inspection. As written, Section 59A-2-12(B) does not specify any manner in which the Superintendent must document or record confidentiality classifications, and we will not read into the statute language that is not contained therein. *See Britton v. Off. of Att'y Gen.*, 2019-NMCA-002, ¶ 28, 433 P.3d 320 ("[A]ppellate courts will not read into a statute language which is not there." (alteration, internal quotation marks, and citation omitted)).

**{11}** Despite the statute's complete lack of any directive or requirement as to the manner in which the Superintendent must deem or classify information as confidential—or, for that matter, how such actions by the Superintendent must be documented or otherwise recorded—the district court found in its decision that multiple witnesses, including those testifying on behalf of the Superintendent's and Presbyterian's interests, had "no personal knowledge regarding promises of confidentiality" or "explicit promise[s] of confidentiality" made by the Superintendent to any hospital in relation to an application for participation in the PCF. The district court appears to have ultimately relied on such lack of personal knowledge regarding confidentiality, or a promise thereof, as a basis upon which to conclude that the Superintendent failed to demonstrate that the relevant information was classified and excepted from inspection. In interpreting Section 59A-2-12(B), the district court states that "[i]nformation may be held in confidence and still not be immune from disclosure pursuant to a court order or statute. [The Superintendent] fails to provide any declaration of immunity or classification of documents . . . to support [their] position." We conclude the district court misconstrued the requirements of the relevant statutes.

**{12}** At the evidentiary hearing, the district court heard testimony stating that the application provided by the Superintendent to hospitals for admission to the PCF contained a statement on the application's cover sheet that read: "The information provided in this application will be held in strict confidence." The application was entered as an exhibit and the cover sheet statement was read directly into the record by the witness. Further, the district court heard testimony that the OSI made best efforts to keep Presbyterian's application materials confidential and met with representatives from Presbyterian to discuss the Superintendent's intention to keep the application materials confidential.

**{13}** Again, Section 59A-2-12(B) does not contain a requirement that the Superintendent make a "promise" or an "explicit promise" as to the confidentiality of a hospital's application materials in order to deem such materials as containing confidential information, nor does the statute set forth any requirement that a witness must eventually testify as to their personal knowledge of the execution of such promises. Given that Section 59A-2-12(B) does not specify the manner in which the Superintendent may classify information as confidential or otherwise require certain demonstrations of proof as to the Superintendent's confidentiality classifications, the statement on the application form that materials will be kept confidential is sufficient to "deem" the materials confidential for the purposes of Section 59A-2-12(B) and to provide a basis for excluding the records from IPRA's requirements, "as otherwise provided by law."

**{14}** We conclude that the district court misconstrued the relevant authorities—namely Section 59A-2-12(B) and its interplay with Section 14-2-1(H) of IPRA—in determining that the Superintendent failed to demonstrate that Presbyterian's application to the PCF was classified as confidential such that the information therein was excepted from inspection under IPRA as otherwise provided by law. In its decision, the district court appears to have determined that 59A-2-12(B) requires certain specific procedures by which the Superintendent may deem information as confidential, yet no such requirements exist in the plain language of the statute. The district court's decision does not comport with the plain language of 59A-2-12(B), and we reverse on such basis. We note that the controversy of this appeal is not repeatable in light of a 2022 administrative regulation, 13.21.2.12 NMAC, which clarifies that "[i]nformation from any health care provider who seeks qualification and admission to the [PCF] shall be kept confidential pursuant to the requirements of" NMSA 1978, Section 41-5-25(D) (2021) of the MMA. Section 41-5-25(D) dictates the minimum information a hospital must provide when seeking participation in the PCF and provides that such information—even if not specifically excepted from inspection under IPRA—shall not be disclosed by the Superintendent or any of the third parties that necessarily participate in the process of hospitals' admission to the PCF. Accordingly, we specify that this opinion applies only to the facts of this case, given that no such comparable dispute shall occur under 13.21.2.12 NMAC and Section 41-5-25(D).

**CONCLUSION**

**{15}** For the above reasons, we reverse and remand for proceedings consistent with this opinion.

**{16}  IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**KATHERINE A. WRAY, Judge**

**MICHAEL D. BUSTAMANTE, Judge,**
**retired, sitting by designation**